ACCEPTED
01-15-00392-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
4/27/2015 11:38:31 AM
CHRISTOPHER PRINE
CLERK

01-15-00392-CV

NO._____

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS

4/27/2015 11:38:31 AM

CHRISTOPHER A. PRINE
Clerk

IN THE COURT OF APPEALS

FOR THE _____ DISTRICT OF TEXAS

AT HOUSTON

In Re Hugh Larkin,

Relator

Original Proceeding from the

County Civil Court at Law #4 of Harris County, Texas

Trial court Cause No. 1047713

RELATOR HUGH LARKIN'S PETITION FOR WRIT OF MANDAMUS

Famose T. Garner

SBN 24074252

6201 Bonhomme Road, Suite 354-N

Houston, Texas  77036

famosegarner@gmail.com

Phone: (832) 722-0881

Fax: (713) 481-0205

ATTORNEY FOR RELATOR

**ORAL ARGUMENT REQUESTED**

**IDENTITY OF PARTIES AND COUNSEL**

Under Texas Rule of Appellate Procedure 52.3(a), a complete list of all parties with the names and addresses of all trial and appellate counsel follows:

Relator:

Hugh Larkin

*Appellate and Trial Counsel for Relator*:

Famose T. Garner
SBN 24074252
6201 Bonhomme Road, Suite 354-N
Houston, Texas  77036
famosegarner@gmail.com
Phone: (832) 722-0881
Fax: (713) 481-0205

Respondent:

Honorable Judge Roberta Lloyd
Harris County Judge
Civil County Court at Law Number 4, Harris County, Texas
201 Caroline, 7th Floor
Houston, Texas 77002

Real Parties in Interest:

Holly Rodriguez
Riverwalk Council of Co-Owners, Inc.

*Trial Counsel for Real Parties in Interest*:
Shawn Robert McKee
LAMBRIGHT & ASSOCIATES
2603 Augusta, Suite 1100
Houston, Texas 77057
srm@lambrightlaw.com
Attorneys for Riverwalk Council of Co-owners, Inc.

Richard Weaver
THE WEAVER LAW FIRM
1800 Bering Drive, Suite 305
Houston, Texas 77057
rweaver@weaverlawyers.com
Attorneys for Holly Rodriguez

## TABLE OF CONTENTS

LIST OF PARTIES AND COUNSEL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF CONTENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INDEX OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

STATEMENT OF JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

ISSUE PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vi

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.        The Parties. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

II.       Relator Asserted Privileges Against Discovery Requests by The Real Parties in Interest. . . . . . . . . . . .1

III.      Relator Moves the Trial Court to Reconsider the March 18, 2015 Order
          Finding Relator Waived Privilege and Imposing Sanctions. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I.        Privilege Is Not Waived When Communications Concerning the Legal Issues of the
          Underlying Suit Are Shared Between Whitney Larkin, Acting Under a Valid Power of
          Attorney as Relator's Representative, and Relator's Attorney. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

II.       Relator's Communications to Whitney Larkin, a Licensed Texas Attorney, Regarding the
          Legal Issues Concerning the Underlying Suit Does Not Constitute a Waiver of Privilege. . . . . . . . 5

PRAYER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

VERIFICATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

APPENDIX

          January 9, 2015 Order Granting Defendant's Motion to Compel
          Plaintiff's Responses to Defendant's Discovery Requests. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . Tab A

          Reporter's Record of Hearing on Plaintiff's Motion to Clarify
          Court's January 9, 2015 Order. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . Tab B

          Reporter's Record of Hearing on Defendant's Motion for Sanctions. . . . . . . . . . . . . . . . . . . . . . . . Tab C

February 24, 2015 Letter Regarding Order Disagreement
and Signed February 27, 2015 Conditional Sanctions Order. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .Tab D

March 18, 2015 Order Overruling Plaintiff's Assertions of Privilege. . . . . . . . . . . . . . . . . . . . . . . . . .Tab E

March 26, 2015 Plaintiff's Motion for Reconsideration
of March 18, 2015 Order Overruling Plaintiff's Assertions of Privilege. . . . . . . . . . . . . . . . . . . . . . .Tab F

April 15, 2015 Order Denying Plaintiff's Motion for Reconsideration. . . . . . . . . . . . . . . . . . . . . . . .Tab G

Power of Attorney. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .Tab H

Whitney Larkin's Affidavit. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .Tab I

*In re McCall*, 2002 Tex. App. LEXIS 9373 (Tex. App. El Paso June 20, 2002) . . . . . . . . . . . . . . . . . . . Tab J

Text of T<small>EX</small>. R. E<small>VID</small>. 503. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .Tab K

# TABLE OF AUTHORITIES

**CASES**                                                                                    **PAGE(S)**

*Bhalli v. Methodist Hosp.*,
 896 S.W.2d 207 (Tex. App.—Houston [1st Dist.] 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Braden v. Marquez*,
 950 S.W.2d 191 (Tex. App.—El Paso 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Clark v. Ruffino*,
 819 S.W.2d 947 (Tex. App.—Houston [14th Dist.] 1991, orig. proceeding) . . . . . . . . . . . . . . . . . . . . 7

*In re McCall*,
 2002 Tex. App. LEXIS 9373 (Tex. App. El Paso June 20, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 5

*Intermedics, Inc. v. Grady*,
 683 S.W.2d 842 (Tex. App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.) . . . . . . . . . . . . . . . . . . . . . . 4

*Mellon Serv. Co. v. Touche Ross & Co.*,
 17 S.W.3d 432 (Tex. App—Houston [1st Dist.] 2000, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Plummer v. Estate of Plummer*,
 51 S.W.3d 840 (Tex. App.—Texarkana 1994, writ denied) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Roberts v. Healey,*
 991 S.W.2d 873 (Tex. App.—Houston [14th Dist.] 1999, pet. denied) . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Stoner v. Massey*,
 586 S.W.2d 843 (Tex. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Vinson & Elkins v. Moran*,
 946 S.W.2d 381 (Tex. App.—Houston [14th Dist.] 1997, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Walker v. Packer*,
 827 S.W.2d 833 (Tex. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**STATUTES**

Tex. R. Evid. 503(a)(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Tex. R. Evid. 503(a)(2)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 5

Tex. R. Evid. 503(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 7

## STATEMENT OF THE CASE

This petition for mandamus seeks to remedy violations of attorney client privilege that would require the disclosure of privileged documents. This controversy arises in a civil matter concerning a breach of contract and fiduciary duty resulting from the encroachment onto Relator's property by the Real Parties in Interest. Respondent is the Honorable Judge Roberta Lloyd, Judge of the County Civil Court at Law No. 4 of Harris County, Texas. Relator seeks relief from the March 18, 2015 order overruling discovery objections that were based on attorney-client privilege. The Judge reviewed the documents *in camera*, and then ordered their disclosure. Relator also seeks relief from the April 15, 2015 order that denied Relator's Motion for Reconsideration confirming the previous order and imposing sanctions. Respondent should be compelled to order that the materials are protected and privileged under Texas Rule of Evidence 503.

## STATEMENT OF JURISDICTION

This Court has jurisdiction to grant this petition for writ of mandamus under Section 22.221(b) of the Texas Government Code because the orders of the trial court constitute a clear abuse of discretion that impacts the rights of the parties to the proceedings below for which no adequate remedy exists by ordinary appeal.

## ISSUE PRESENTED

Whether the trial court abused its discretion in finding that communications with Whitney Larkin, acting under a valid power of attorney as Hugh Larkin's representative and a licensed attorney, concerning legal issues waived privilege and in overruling Relator's objections based on assertions of privilege to discovery requests of the Real Parties in Interest.

## STATEMENT OF FACTS[1]

### I.      The Parties

Relator, Hugh Larkin, is an individual residing in Harris County, Texas.    Relator owns a condominium located at 2300 Old Spanish Trial, Unit 2070, Houston, Texas    77054.    Relator's daughter, Whitney Larkin, lives in the condominium.    Relator executed a power of attorney to Ms. Larkin to handle all affairs related to the condominium.[2]

The Real Parties in Interest are Holly Rodriguez, an individual whose principal residence is 2300 Old Spanish Trail, Unit 2071, Houston, Texas 77054, (the adjacent unit) and Riverwalk Council of Co-Owners, Inc., a Texas non-profit corporation organized under the laws of the State of Texas that is the condominium association for Larkin's and Rodriguez' units.

### II.      Relator Asserted Privileges Against Discovery Requests by The Real Parties in Interest.

On May 16, 2014, Relator sued the Real Parties in Interest for breach of contract, breach of fiduciary duty, trespass to try title, conversion, unjust enrichment, and promissory estoppel for removing a firewall and encroaching onto Relator's property.[3]   (R. 1-81; 86-93.)   On January 29, 2015, Relator responded to discovery requests and asserted privileges to some of the requests.[4]   On February 5, 2015, Real Party in Interest Rodriguez filed a motion for sanctions.  (R. 178-203.)  At the February 24, 2015 hearing on the motion for sanctions, Rodriguez argued that communications between Whitney Larkin and Hugh Larkin should not be privileged.  (R. 204-30.)  The trial court ordered Relator to produce a privilege log and to deliver the documents for an *in camera* inspection, (R. 231-38.), which promptly

---

[1] The Relator's Record in Support of this Petition for Writ of Mandamus is filed herewith.  Each document of the record is bookmarked.  The Power of Attorney and Whitney Larkin's Affidavit contained in the record are also attached as Appendix H and I, respectively.  References to the record herein are shown as "R. _" with the record page number following the "R."
[2] Relator includes as part of the Appendix the executed Power of Attorney (Tab F).
[3] The Plaintiff's Petition is still pending and presently set for trial on September 14, 2015.  (R. 308.)
[4] Relator objected to Real Party in Interest Rodriguez' discovery requests asserting that the responses were due outside the discovery period.  The trial court ordered the responses due on January 29, 2015.  Real Party in Interest Rodriguez argued that the January 5, 2015 Order overruled Relator's asserted objections, which had not been asserted at the time of rendition of the January 5, 2015 Order.  Relator filed a Motion to Clarify the January 5, 2015 order.  (R. 157-75.)

1

occurred.[5]  On March 18, 2015, the trial court issued an order overruling all of Relator's objections and assertions of privilege because none of the communications were between Relator and his attorney of record and Whitney Larkin was outside of the privilege.[6]  (R. 240.)

### III.  Relator Moves the Trial Court to Reconsider the March 18, 2015 Order Finding Relator Waived Privilege.

On March 26, 2015, Relator moved for reconsideration of the trial court's order finding that Relator waived privilege and ordering Relator to produce the requested documents.  (R. 241-306.)  On March 27, 2015, Real Party in Interest Rodriguez moved to compel the discovery and for sanctions against Relator and Relator's counsel.[7]  On April 15, 2015, the trial court affirmed the March 18, 2015 order and ordered Relator to produce the requested documents or be subject to sanctions for $500.00.  (R. 310.)  This petition follows.

### ARGUMENT

Mandamus relief is appropriate because the trial court abused its discretion by overruling Relator's objections asserting privilege regarding communications between Relator, Relator's agent Whitney Larkin, and Relator's attorney Phillip Silberman.  Mandamus relief will lie when a trial court clearly abuses its discretion and there is no adequate remedy on ordinary appeal.  *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992).  A trial court's failure to correctly apply the law constitutes an abuse of discretion that warrants mandamus relief.  *Id*. at 839; *see also Braden v. Marquez*, 950 S.W.2d 191, 193-94 (Tex. App.—El Paso 1997).

To obtain a writ of mandamus, Texas law requires proof of "a legal duty to perform a nondiscretionary act; a demand for performance and a refusal."  *Stoner v. Massey*, 586 S.W.2d 843, 846 (Tex. 1997).  Here, Relator meets all three: (1) the trial court has a non-discretionary duty to apply the

---

[5] The Relator will provide these documents to the Court in a separate filing.

[6] Relator includes as part of the Appendix the March 18, 2015 Order (Tab E).

[7] Relator originally set his Motion for Reconsideration for April 22, 2015; however, Real Party in Interest Rodriguez set her Motion for Sanctions on April 15, 2015.  Therefore, Relator reset his Motion for Reconsideration to be heard the same day. (R. 307.)

law to the facts, (2) Relator objected to Rodriguez' discovery requests by properly asserting privilege and requested that the trial court reconsider the order, and (3) the trial court refused Relator's request by entering an order requiring Relator to produce documents in response to discovery requests and granting sanctions for $500.00 for Relator's refusal to do so.

This Petition is proper because Relator has no clear or adequate remedy other than mandamus relief. Once privileged documents are produced, they cannot be retrieved. The production of those documents cannot be undone. The Appellate Court cannot cure the trial court's discovery error by appeal after trial. Therefore, Relator seeks mandamus relief.

I.  **Privilege is Not Waived When Communications Concerning the Legal Issues of the Underlying Suit are Shared Between Whitney Larkin, Acting Under a Valid Power of Attorney as Relator's Representative, and Relator's Attorney of Record.**

Mandamus relief is appropriate because the trial court abused its discretion by ordering the production of communications between Relator's agent, Whitney Larkin, and Relator's attorney, Philip Silberman. The attorney-client privilege attaches to confidential communication made to facilitate the rendition of professional legal services to the client between a representative of the client and the client's lawyer or a representative of the lawyer. *See* Tex. R. Evid. 503(b)(1). A "representative of the client" is any person "having authority to seek legal services on behalf of the client or any person who sends or receives confidential information for the purpose of obtaining or effectuating legal services on behalf of the client." *See* Tex. R. Evid. 503(a)(2)(A).

Texas Rules of Evidence 503(a)(5) defines confidential communication as information "not intended to be disclosed to third persons" unless the disclosure is made in furtherance of legal services or the third person is necessary to transmit the communication on behalf of the client.

A person with a power of attorney is covered with attorney-client privilege. In *In re McCall*, 2002 Tex. App. LEXIS 9373 (Tex. App. El Paso June 20, 2002), a stepdaughter sought discovery that the stepmother claimed was covered by the attorney-client privilege. The trial court held that privilege only

3

attached to the stepmother's communication and that the stepdaughter was outside of the privilege. *Id.* at 6. The Eighth District Court of Appeals granted mandamus and held that an attorney-client relationship existed among the attorney, the stepmother, and the stepdaughter via a power of attorney. *Id.* at 1. The stepdaughter had executed a power of attorney for her stepmother to perform business transactions. *Id*. The stepmother consulted and retained an attorney on behalf of the stepdaughter for certain legal services. *Id*. at 2. The stepdaughter ultimately severed the agency relationship with the stepmother and subpoenaed legal invoices between the attorney and the stepmother. *Id.* The trial court held that no attorney-client relationship existed between the stepdaughter and the attorney. *Id*. at 3. The trial court also held that the invoices between the stepmother and the attorney were protected from the stepdaughter under the attorney-client privilege. *Id*. The appellate court overruled the trial court's ruling that no attorney-client relationship existed and reasoned that the power of attorney created an agency relationship between the stepdaughter and the stepmother. *Id*. at 4. The court held that, because the stepmother was the stepdaughter's agent, the attorney-client relationship existed between the stepdaughter, stepmother, and any firm that the stepmother consulted in her capacity as agent. *Id*. at 6.

Like the parties in *McCall*, Relator executed a power of attorney for his daughter, Whitney Larkin, to handle his business affairs regarding the property. "A power of attorney creates an agency relationship." *Id*. at 5 (citing *Plummer v. Estate of Plummer*, 51 S.W.3d 840, 842 (Tex. App.—Texarkana 1994, writ denied). As Relator's agent, Whitney Larkin is "authorized . . . to transact some business for [Relator]." *Id*. at 4 (citing *Bhalli v. Methodist Hosp.*, 896 S.W.2d 207, 210 (Tex. App.—Houston [1st Dist.] 1995). Relator named Whitney Larkin as his agent; therefore, Whitney Larkin had "actual authority . . . to perform such acts as are necessary and proper to accomplish the purpose for which the agency was created." *Id*. at 5 (citing *Intermedics, Inc. v. Grady*, 683 S.W.2d 842, 847 (Tex. App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.). Whitney Larkin is Relator's representative.

Because Whitney Larkin contacted and retained an attorney on behalf of Relator in her capacity as his agent, "an attorney-client relationship was created between [Mr. Larkin] and any law firm that [Ms. Larkin] consulted in her capacity as [his] agent." *Id.* at 6. Similar to the parties in *McCall* whose attorney-client privilege extended to the client's representative, Relator's attorney-client privilege extends to Ms. Larkin. Relator shared communications with Ms. Larkin in furtherance of the subject matter of this suit. Hence, as Relator's agent, any communications shared with her or from her to an attorney on Relator's behalf is confidential and protected by the attorney-client privilege.

Tex. R. Evid. 503(a)(2)(A) and applicable case law clarify that the attorney-client privilege extends to Whitney Larkin as Relator's agent and any communications between her and Relator and Relator's attorney of record remain privileged. Given that a power of attorney exists naming Whitney Larkin as Relator's agent and Whitney Larkin communicated with Relator and Relator's attorney of record in her capacity as Relator's agent regarding matters directly related to this suit, all requested communications are protected by the attorney-client privilege. The trial court abused its discretion in ordering Relator to produce documents responsive to Real Party in Interest Rodriguez' discovery requests and sanctions.

**II. Relator's Communications to Whitney Larkin, a Licensed Texas Attorney, Regarding the Legal Issues Concerning the Underlying Suit Does Not Constitute a Waiver of Privilege.**

Mandamus relief is appropriate because the trial court abused its discretion by finding that Relator waived privilege by discussing the disputed matter with Whitney Larkin, a licensed Texas attorney. Relator's communications with Whitney Larkin regarding the legal issues concerning this suit are privileged because the parties' intentions and conduct established an attorney-client relationship. An attorney-client relationship may be created through contract or implied by the parties' conduct. *Mellon Serv. Co. v. Touche Ross & Co.*, 17 S.W.3d 432, 437 (Tex. App—Houston [1st Dist.] 2000, no pet.). For the relationship to be established, "the parties must explicitly or by their conduct manifest an

5

intention to create it." *Roberts v. Healey,* 991 S.W.2d 873, 880 (Tex. App.—Houston [14th Dist.] 1999, pet. denied). Relator solicited Whitney Larkin's advice as an attorney regarding his property. Whitney Larkin's responses to Relator's legal inquiries were based on her legal expertise and experience. Based on the subject of their communications, Relator's and Whitney Larkin's communications are privileged because they intended to create an attorney-client relationship.

In *Vinson & Elkins v. Moran*, 946 S.W.2d 381, 405 (Tex. App.—Houston [14th Dist.] 1997, no pet.), the Court held that an attorney-client relationship existed, based on the conduct of the parties, despite their verbal assertions. The attorney and beneficiary agreed that Vinson & Elkins did not represent the beneficiary, and the beneficiary retained other counsel. *Id*. at 404. However, the beneficiary and the attorney for Vinson & Elkins conducted meetings and exchanged communications regarding the disputed matter. *Id*. at 405. Even though the parties verbally disputed that there was an attorney-client relationship, the Court held that the parties conducted themselves as though an attorney-client relationship existed. *Id*. at 404-05. Because a client may have an attorney-client relationship with more than one attorney, the Court held that the evidence legally and factually supported the existence of an attorney-client relationship. *Id*. at 405.

Similar to *Vinson & Elkins*, Relator and Whitney Larkin conducted meetings, and exchanged communications regarding the disputed matter. Unlike the parties in *Vinson & Elkins*, Relator and Whitney Larkin agreed that Whitney Larkin would represent him in matters related to the disputed property. Relator requested that Whitney Larkin act on his behalf regarding all matters related to the property. Whitney Larkin extensively assisted Relator with his responses to discovery requests.[8] She also assisted the attorney of record with case strategy and litigation decisions. All communications between Relator and Whitney Larkin regarding the matter were intended to be confidential and

---

[8] For example, Whitney Larkin helped draft the interrogatory responses. (R. 196.)

6

privileged.[9]   Therefore, Relator and Whitney Larkin established an attorney-client relationship, both express and implied, through their conduct and communications.

No disciplinary rule expressly describes when an attorney-client relationship exists, but the Preamble of a Lawyer's Responsibilities to the Disciplinary Rules of Professional Conduct discusses the various functions an attorney might perform when representing clients.  *Clark v. Ruffino*, 819 S.W.2d 947, 949 (Tex. App.—Houston [14th Dist.] 1991, orig. proceeding).  These functions include evaluating a client's affairs and reporting about them to the client or to others.  *Id*.  Relator discussed issues pertaining to the instant matter with Whitney Larkin.  Relator solicited legal advice from Whitney Larkin, and Whitney Larkin offered legal advice pertaining to Relator's legal issues.  Whitney Larkin's actions created an attorney-client relationship because she acted within her responsibilities as a licensed Texas attorney, which establishes privilege for the communications between Relator and Whitney Larkin.

Relator's and Whitney Larkin's conduct and communications created the existence of an attorney-client relationship that attached to their confidential communications that were made to facilitate the rendition of professional legal services to the client between a representative of the client and the client's lawyer or a representative of the lawyer.  *See* Tex. R. Evid. 503(b)(1).  Therefore, Relator's communications with Whitney Larkin did not waive attorney-client privilege.  The trial court abused its discretion by finding that Relator waived privilege by discussing the disputed matter with Whitney Larkin, a licensed Texas attorney.

## PRAYER FOR RELIEF

Relator has no adequate remedy other than mandamus, and is entitled to relief from respondent's actions.  Relator respectfully requests that:

1.   This petition for writ of mandamus be filed and set for oral argument.

---

[9] Relator includes as part of the Appendix Whitney Larkin's Affidavit filed in support of Relator's Motion for Reconsideration of the March 18, 2015 Order (Tab E).

2. Notice of filing of this petition and the date of oral argument be given to all parties.

3. Following the oral argument, this Court grant Relator a writ of mandamus directed to Respondent, Honorable Roberta Lloyd, commanding Respondent to vacate the orders of March 18, 2015, and April 15, 2015, entered in Cause No. 1047713, Hugh Larkin vs. Holly Rodriguez and Riverwalk Council of Co-Owners, Inc., in their entirety.

4. This Court grant such other and further relief to which Hugh Larkin, Relator, may be justly entitled.

Respectfully submitted,

/s/Famose T. Garner
Famose T. Garner
SBN 24074252
6201 Bonhomme Road, Suite 354-N
Houston, Texas  77036
famosegarner@gmail.com
Phone: (832) 722-0881
Fax: (713) 481-0205
*Attorney for Relator Hugh Larkin*

8

## VERIFICATION

Before me, came Famose T. Garner who being a person known to me stated that he has read the foregoing petition and the facts stated within that are not verified by the record are true and correct to the best of his knowledge and the exhibits filed separately in an appendix to this petition are true and correct copies of the original documents.

SUBSCRIBED AND SWORN TO BEFORE ME on *April 27, 2015* .

Kimberley A. Evans
Notary Public
State of Texas

KIMBERLEY A. EVANS
Notary Public, State of Texas
My Commission Expires
August 04, 2018

My commission expires *August 4, 2018* .

## CERTIFICATION OF COMPLIANCE WITH APPELLATE RULE 52.3(J)

Undersigned counsel hereby certifies that he has reviewed Relator's Petition for Writ of Mandamus and concludes that every factual statement in this petition is supported by competent evidence included in the appendix or record, as required by Appellate Rule 52.3(j).

Famose T. Garner

## CERTIFICATION OF COMPLIANCE WITH APPELLATE RULE 9.4(I)

Undersigned counsel hereby certifies that this document contains 2,529 words, as indicted by the word-count function of the computer program used to prepare it, and excluding the caption, identity of the parties and counsel, statement regarding oral argument, table of contents, index of authorities, statement of the procedural history, signature, proof of service, certification, certificate of compliance, and appendix, as approved by Appellate Rule 9.4(i).

Famose T. Garner

I certify that a true copy of the above Petition for Writ of Mandamus has been served to the following parties on in compliance with Tex. R. App. P. 9.5(b) on April 27, 2015:

<u>Respondent</u>:

Honorable Judge Roberta Lloyd
Harris County Judge
Civil County Court at Law Number 4, Harris County, Texas
201 Caroline, 7th Floor
Houston, Texas 77002
*Via Hand Delivery*

<u>Counsel for Real Parties in Interest</u>:

Shawn Robert McKee
Shawn Robert McKee
LAMBRIGHT & ASSOCIATES
2603 Augusta, Suite 1100
Houston, Texas 77057
srm@lambrightlaw.com
Attorneys for Riverwalk Council of Co-owners, Inc.
*Via Efile and Email*

Richard Weaver
THE WEAVER LAW FIRM
1800 Bering Drive, Suite 305
Houston, Texas 77057
rweaver@weaverlawyers.com
Attorneys for Holly Rodriguez
*Via  Efile and Email*

<u>/s/Famose T. Garner</u>

Famose T. Garner

CAUSE NO. 1047713

| | | |
|---|---|---|
| HUGH LARKIN | § | IN THE COUNTY CIVIL COURT |
| | § | |
| vs. | § | AT LAW NO. FOUR (4) |
| | § | |
| HOLLY RODRIGUEZ & RIVERWALK | § | |
| COUNCIL OF CO-OWNERS, INC. | § | OF HARRIS COUNTY, TEXAS |

**ORDER GRANTING DEFENDANT'S MOTION TO COMPEL PLAINTIFF'S RESPONSES TO DEFENDANT'S DISCOVERY REQUESTS**

On this came to be heard *Holly Rodriguez's Motion to Compel Hugh Larkin to Respond to Discovery* Requests and the Court after considering the motion, the response, if any, and arguments of counsel is of the opinion that the motion is well-taken and should be GRANTED in all parts. It is therefore,

ORDERED, ADJUDGED, and DECREED that HUGH LARKIN's objection to HOLLY RODRIGUEZ'S First Set of Requests for Production, First Set of Interrogatories, and First Set of Requests for Admissions is overruled. It is further,

ORDERED, ADJUDGED, and DECREED that HUGH LARKIN shall produce and serve his responses to HOLLY RODRIGUEZ'S First Set of Requests for Production, First Set of Interrogatories, and First Set of Requests for Admissions on or before Jan 29 , 20 15 It is further,

ORDERED, ADJUDGED, and DECREED that the discovery deadline is reset to 30 days before the trial date of this cause.

SIGNED this 9 day of Jan , 2015

_____
JUDGE PRESIDING

**RECORDER'S MEMORANDUM:**
At the time of recordation, this instrument was found to be inadequate for the best photographic reproduction because of illegibility, carbon or photo copy, discolored paper, etc. All blockouts, additions and changes were present at the time the instrument was filed and recorded.

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 4/21/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Donna M. Hernandez



*REPORTER'S RECORD*
*VOLUME 1 OF 1 VOLUME*

*TRIAL COURT CAUSE NO. 1047713*

| | | |
|---|---|---|
| *HUGH LARKIN* | *)* | *IN THE COUNTY CIVIL COURT* |
| | *)* | |
| *vs.* | *)* | *AT LAW NUMBER FOUR (4)* |
| | *)* | |
| *HOLLY RODRIGUEZ &* | *)* | |
| *RIVERWALK COUNCIL OF* | *)* | |
| *CO-OWNERS, INC.* | *)* | *HARRIS COUNTY, T E X A S* |

*PLAINTIFF'S MOTION TO CLARIFY JUDGE'S JANUARY 5, 2015, ORDER*

*On the 18thh day of February, 2015, the following proceedings came on to be held in the above-entitled and numbered cause before the Honorable Roberta A. Lloyd, Judge Presiding, held in Houston, Harris County, Texas.*

*Proceedings reported by computerized stenotype machine.*

*APPEARANCES*

*FAMOSE T. GARNER*
*SBOT NO. 24074252*
*Attorney at Law*
*10101 Southwest Freeway, Suite 400*
*Houston, Texas 77074*
*Telephone: (832) 722-0881*
*Fax: (713) 481-0205*
*E-mail: Famosegarner@gmail.com*
*Attorney for Plaintiff, Hugh Larkin*

*JAMES HAMILTON FOLEY*
*SBOT NO. 24059764*
*The Weaver Law Firm*
*1800 Bering Drive, Suite 305*
*Houston, Texas 77057*
*Telephone: (713) 572-4900*
*Fax: (713) 626-9708*
*E-mail: Rweaver@weaverlawyers.com*
*Attorney for Defendant, Holly Rodriguez*

*SHAWN ROBERT MCKEE*
*SBOT NO. 24049403*
*Lambright & Associates*
*2603 Augusta, Suite 1100*
*Houston, Texas 77057*
*Telephone: (713) 840-1515*
*Fax: (713_ 840-1521*
*E-mail: Srm@lambrightlaw.com*
*Attorney for Defendant, Riverwalk Council of*
*Co-Owners, Inc.*

**CHRONOLOGICAL INDEX**

**VOLUME 1**

**PLAINTIFF'S MOTION TO CLARIFY JUDGE'S JANUARY 5,**

**2015, ORDER**

**February 18, 2015**

                                              **PAGE   VOL.**

Adjournment  ..............................14      1

Reporter's Certificate .....................15      1

THE COURT: The record doesn't know who you are.

MR. GARNER: My name is Famose Garner for the plaintiff.

MR. FOLEY: James Foley for defendant Holly Rodriquez.

MR. MCKEE: Shawn McKee for Defendant Riverwalk Council.

THE COURT: Okeydoke.

MR. GARNER: Your Honor, before we get started, will the Court take judicial notice of a couple of pleadings filed in this case?

THE COURT: Just argue your motion, please.

MR. GARNER: Yes, Your Honor.

The Court issued an order that the defendant was supposed to respond by a date certain. The defendant responded -- I mean, the plaintiff -- the plaintiff responded to the defendant's written discovery by a date certain -- the defendant asserts that this Court had already overruled all objections and assertions of privilege with that order.

The way the order reads, it reads more like it was granting -- I'll say granting a protective order because the only relief that the

plaintiff asked for was to be able to respond by a date certain. The objection was to the timeliness of the request for production. There were no responses raised. There were no objections to responses raised, no assertions of privilege raised in either the motion to compel or the response. To overrule all those assertions that had not been raised yet would be granting relief; one, outside the scope of the motion; and two, would not allow the plaintiff his due process rights to assert different levels of privilege.

So we would, therefore, ask the Court if the Court would clarify if that was the relief more along the terms of protective order rather than overruling substantive objections and assertions of privilege?

THE COURT: What do you have to say?

MR. FOLEY: I just read the motion this morning. There was an issue with having been served with notice. I checked the docket, found out about it online, and contacted him yesterday.

THE COURT: Did you give him notice?

MR. GARNER: Yes, Your Honor. In fact --

MR. FOLEY: That being said, they had

one objection back in November, and it was that it was 30 days prior to trial. And then, we filed our motion to compel. Court granted it. They overruled their single objection. They were required to respond by the 29th. Then they asserted all these brand new objection privileges.

THE COURT: Did you answer any of them?

MR. GARNER: Yes, Your Honor. We answered all the ones that did not delve into privileged information or were objectionable.

MR. FOLEY: I have a motion for sanctions set for next Wednesday that identifies every single one of the responses --

THE COURT: How many did he answer?

MR. FOLEY: I would say probably, if I had to guess, probably 25 percent of them. Half of them are nonresponsive. I'll read one as an example. "Please provide detailed description of the facts asserted basis --"

THE COURT: You can read faster than she can type.

MR. FOLEY: "Please provide a detailed description of the facts that serve a --"

THE COURT: You're still --

MR. FOLEY: -- "Larkin's basis for requesting damages and punitive damages."

Ms. Rodriquez had committed several torts. At the time defendant has essentially stolen space from the plaintiff. She has done it in a way that's egregious, shocks the conscience." That's just the standard nonresponsive answer I'm getting to discovery requests.

We're trying to figure out what their complaint is.

THE COURT: Would you like to say anything?

MR. MCKEE: Your Honor, I think the order was pretty clear, and I think that plaintiff's responses to discovery are at best pretty useless. They have no substantive weight in them at all given we're two weeks out from trial.

MR. FOLEY: Set for trial March 9th.

MR. GARNER: May I respond to two things?

THE COURT: Uh-huh.

MR. GARNER: First, as far as service, Your Honor, I move to --

THE COURT: He said he got service, so let's move on.

MR. FOLEY: We're moving past that.

MR. MCKEE: We're here.

THE COURT: Stop. Stop. So, I mean, they had to come here and ask me to enter an order making your client respond to discovery, and then it sounds like what percentage do you believe you responded to?

MR. GARNER: Well, Your Honor, if I had to put a ballpark, it was about half. The rest of the -- I'll give you --

THE COURT: Okay. The one he read, the one he read that just asked, kind of, for give us a ballpark of what damages you're seeking, I mean, egregious is not a number. Why didn't you answer that?

MR. GARNER: Your Honor, the question asked for what happened, not necessarily the numbers.

THE COURT: Can I see that again?

MR. FOLEY: Absolutely (tenders document.) Take a look at number two while you're at it.

THE COURT: No. The one that you read. I see. I think that in looking at the response that was used as an example of one of the answers you did give, it says, "Give us some facts."

I mean, they're entitled to at least a rudimentary sketch of what's the basis of this. I mean, what are your claims based upon? Facts? And you just have said they're egregious, and there are a lot of torts. There are a lot of torts. So why -- that doesn't help them.

MR. GARNER: Yes, Your Honor. But there were other requests that did narrate that answer.

THE COURT: Then why didn't you say, "See response to question blah, blah"?

MR. GARNER: I did for some of them, Your Honor. I probably should have for that one as well.

MR. FOLEY: Your Honor, another example, I served seven interrogatories. Number two objects because --

THE COURT: I saw it.

MR. FOLEY: Exceeds minimum amount of allowable interrogatories. Turn to *Texas Rules of Civil Procedure*. That includes sub parts and lists.

THE COURT: That's okay.

So here we are under 30 days out.

MR. FOLEY: Right. Well, we do have a motion for sanctions set next Wednesday which we're

going to ask for the attorney's fees for showing up today as part of that motion.

*THE COURT:* Well, I didn't prepare the order on the Motion to Compel. I think that if a Motion to Compel is entered, Counselor, I think that it's presumed you're going to use your best faith efforts to answer questions that they're having to compel you to answer in the first place. I'm not going to sit and take the time to count what percentage. You say 25. You say 50.

So at least half of them have gone unanswered, which means now we're coming back for another we're doing today. So now we're having three hearings on discovery. The one question I've looked at I don't believe is sufficient. I don't believe that's a sufficient answer. I'll withhold judgment on the others, but what has now happened is, by virtue of this, we're not going to be able to keep this trial date. So that by the actions of your client, now my docket is going to have to be adjusted to accommodate somebody that has not complied with just basic -- I mean -- I don't know why you thought that was a good answer or he thought it was a good answer, whomever.

I would say that I think that the

order traditionally where I see orders on that in the future, if you think that I have signed orders in the past that have said, you know, that there are objections or they're late, that they've waived all objections and they must answer blah, blah, blah. I don't think that that says that. So I don't think that I really hold him accountable for that. I can't say that I think that this is a good way to do this, and I really do not appreciate the fact that just to get discovery that we're going to dance this dance because it's costing everybody money.

So what I would suggest is -- when is the motion for sanctions set?

MR. FOLEY: I believe it's next Wednesday.

THE COURT: Next Wednesday? I would suggest, Counsel, that between now and next Wednesday -- I'll clarify that I don't think that the order that was signed -- I don't think it waived all the objections. By the same token, I would say between now and next Wednesday, I would get with them and figure out what you can answer.

MR. GARNER: Yes, ma'am.

THE COURT: Particularly, with the admissions at least admitted or denied.

MR. FOLEY: I don't think admissions were the main problem.

THE COURT: I would get with them.

MR. FOLEY: But, Your Honor, I would say the compel motion, the reason we didn't address privileges and all the other objections was because none of them was asserted. There was only one objection. So the order addresses, it says it overrules the objection. There was one.

THE COURT: I understand.

MR. FOLEY: It's hard to address all the ones he didn't want to assert at that time.

THE COURT: I guess what -- I'm not saying -- look, I'm not trying -- I'm just saying, I think that what people have done in the past is they have anticipated. And once somebody is compelled to answer, they have anticipated -- possibly from past experiences -- they have anticipated they might be met when the answers come with a lot of objections or claims. And so they have prophylactically put in this -- and by the way, and sometimes I sign it. Sometimes I don't, depending on the nature of the motion to compel.

So I'm not saying I do it all the time, but I just think on the face of it at this

point, the objection is overruled because you just objected to all the discovery because you said it was decided that we have a new trial. It wasn't really inside because it reopened the Rules of Civil Procedure if I recall correctly.

MR. FOLEY: Correct. We asked for you to extend the discovery period.

THE COURT: It's not extended. Once I set -- once a new trial date is set, the rules say up to 30 days before and that's the policy of this Court. It's opened up 30 days before. I think I wrote it in.

MR. FOLEY: I think it's in the order that says that the discovery period is reopened and that --

THE COURT: Oh, 30 days before the trial date of this cause. Boom. So now guess what? Now we're going to have to have a new trial date. It's going to reopen it. Here we go.

MR. MCKEE: May I interject slightly?

THE COURT: Yeah.

MR. MCKEE: To the extent it took more than 30 days for them to provide responses to the discovery that was previously filed, wouldn't those objections all have been overruled by operation of

law anyway?

THE COURT: I don't want to go to that. I've done what I can do today, which I don't think it was a blanket -- I don't think it was a blanket overruling objections. I would suggest strongly that you talk.

MR. GARNER: Yes, Your Honor.

THE COURT: Thank you. See you next week.

MR. GARNER: Thank you, Your Honor.

(Proceedings adjourn).

## Reporter's Certificate

February 18, 2015

*STATE OF TEXAS*

*COUNTY OF HARRIS*

*I, Karen S. Bernhardt, Official Court Reporter in and for the County Civil Court at Law No. 4 of Harris County, State of Texas, do hereby certify that the above and foregoing contains a true and correct transcription of all portions of evidence and other proceedings requested in writing by counsel for the parties to be included in this volume of the Reporter's Record in the above-styled and numbered cause, all of which occurred in open court or in chambers and were reported by me.*

*I further certify that this Reporter's Record of the proceedings truly and correctly reflects the exhibits, if any, offered by the respective parties.*

*I further certify that the total cost for the preparation of this Reporter's Record is $97.50 and was paid by Whitney Larkin.*

*WITNESS MY OFFICIAL HAND this the 20th day of April, 2015.*

*/s/Karen S. Bernhardt*
*KAREN S. BERNHARDT*
*Texas CSR 1601*
*Official Court Reporter*
*County Civil Court at Law No. 4*
*Harris County, Texas*
*201 Caroline, Room 740*
*Houston, Texas  77002*
*Telephone:  (713) 368-6678*
*Expiration:  12/31/16*

*REPORTER'S RECORD*
*VOLUME 1 OF 1 VOLUME*

*TRIAL COURT CAUSE NO. 1047713*

*HUGH LARKIN                    )  IN THE COUNTY CIVIL COURT*
*                               )*
*vs.                            )  AT  LAW NUMBER FOUR (4)*
*                               )*
*HOLLY RODRIGUEZ &              )*
*RIVERWALK COUNCIL OF           )*
*CO-OWNERS, INC.                )  HARRIS COUNTY, T E X A S*

*DEFENDANT'S MOTION FOR SANCTIONS AGAINST PLAINTIFF*
*AND PLAINTIFF'S ATTORNEY*

*On the 24thh day of February, 2015, the*

*following proceedings came on to be held in the*

*above-entitled and numbered cause before the*

*Honorable Roberta A. Lloyd, Judge Presiding, held in*

*Houston, Harris County, Texas.*

*Proceedings reported by computerized stenotype*

*machine.*

APPEARANCES

*FAMOSE T. GARNER*
*SBOT NO. 24074252*
*Attorney at Law*
*10101 Southwest Freeway, Suite 400*
*Houston, Texas 77074*
*Telephone:  (832) 722-0881*
*Fax:  (713) 481-0205*
*E-mail:  famosegarner@gmail.com*
*Attorney for Plaintiff, Hugh Larkin*

*JAMES HAMILTON FOLEY*
*SBOT NO. 24059764*
*The Weaver Law Firm*
*1800 Bering Drive, Suite 305*
*Houston, Texas 77057*
*Telephone:  (713) 572-4900*
*Fax:  (713) 626-9708*
*E-mail:  rweaver@weaverlawyers.com*
*Attorney for Defendant, Holly Rodriguez*

*SHAWN ROBERT MCKEE*
*SBOT NO. 24049403*
*Lambright & Associates*
*2603 Augusta, Suite 1100*
*Houston, Texas 77057*
*Telephone:  (713) 840-1515*
*Fax:  (713_ 840-1521*
*E-mail:  Srm@lambrightlaw.com*
*Attorney for Defendant, Riverwalk Council of*
*Co-Owners, Inc.*

**CHRONOLOGICAL INDEX**

**VOLUME 1**

**DEFENDANT'S MOTION FOR SANCTIONS AGAINST PLAINTIFF**

**AND PLAINTIFF'S ATTORNEY**

**February 24, 2015**

|                           | PAGE | VOL. |
|---------------------------|------|------|
| Adjournment ............................26 | 26 | 1 |
| Reporter's Certificate ....................27 | 27 | 1 |

THE COURT: 1047713. Identify yourself so Ms. Bernhardt will know who is talking.

MR. FOLEY: James Foley for Holly Rodriquez. This is Holly Rodriquez's Motion for Sanctions.

MR. MCKEE: Shawn McKee for Riverwalk Council of Co-Owners.

MR. GARNER: Famose Garner, G-A-R-N-E-R, for plaintiff Hugh Larkin.

THE COURT: Okay.

MR. FOLEY: We were here last week, and we're back. We've made substantially zero progress. Yesterday after 5:00 o'clock Mr. Garner supplemented Hugh Larkin's responses to Ms. Rodriquez's interrogatories containing substantially the same invalid objections and essentially refusals to respond to the questions asked as before; specifically, number two objects because it states it exceeds the minimum amount of allowable interrogatories under *Texas Rules of Civil Procedures*.

THE COURT: Well, what's your response to that? I'm asking him, what do you say whether he --

MR. FOLEY: Well, Your Honor, there

were only seven interrogatories in total. This
one -- first of all --

THE COURT: Let me -- stop just a
second. Let me catch up with you. These are
requests for production?

MR. FOLEY: Those are in the same
condition. Nothing has changed in the production at
all.

THE COURT: So sorry. So number two.

MR. FOLEY: Here are the supplemental.

MR. MCKEE: It's unlikely you have the
copy of the supplement.

THE COURT: Do you have a copy?

MR. GARNER: I do, Your Honor.

THE COURT: I don't want the e-mail.
I want the supplemental response you filed. Do you
have an extra copy?

MR. FOLEY: You can have this copy.

THE COURT: Okay.

MR. FOLEY: "A discreet sub parts" --

THE REPORTER: Slow down.

MR. FOLEY: I'm sorry. A discreet sub
part asks for information not logically or factually
related to the primary interrogatory. And every
single one of these sub parts is specifically related

to the square footage in the attic space at issue.

Further there are only seven. There are seven interrogatories in total and based on their level two discovery pleadings, I'm entitled to 25 interrogatories. So even if these were discreet sub parts, I still haven't achieved 25 interrogatories to Mr. Larkin. I mean, there is no basis for the objection at all. The same objection was made to number four. This interrogatory exceeds the minimum amount of allowable interrogatories under the *Texas Rules of Civil Procedure.*

This one, if you divided it into sub parts, which I'm not sure that these even qualify; but if you did, there would be only four. So if you add everything up, the most interrogatories you could come up with would be 15, even though --

*THE COURT:* Thank you.

*MR. GARNER:* Your Honor, of the interrogatories, every one asks for lists and each list is a sub part, Your Honor.

*THE COURT:* Well, that's not exactly what the rule says, Counsel, as we know. If it's related somewhat, then it's not -- I mean, it's considered -- you can have more than one area in a question. I mean, but I object for the sake of

argument, let's assume for the sake of argument that your theory is correct, he's still, each sub part if you count it, doesn't go over the number.

MR. GARNER: Your Honor, it's -- so for two, there are seven and two, seven in --

THE COURT: Well, okay. One, two, three, four, five, seven -- okay. There is seven. There is number three would be -- so seven numbered one would be just one. So that's eight. Number three is just one. That's nine. Number four a description of the property, ten. Estimated value, 11. Estimated reduction, 12. That would be 13. Six would be 14. Seven, 15, I mean -- assuming --

MR. GARNER: To the extent that the objection is overruled, the plaintiff has answered the questions to the best of the plaintiff's ability. For example, the response to number two gives -- I don't know -- what else could be said to that question other than we need somebody to -- an engineer, to take actual measurements of the floor space.

I'm not entirely sure you could have a diameter of a wall partition. I think, the term there is cross section. But the proper -- we've complied to the extent that the --

THE COURT: I don't believe you have. I don't believe you have. You just raised objection. So with regards to your objection that they exceed, that is -- your objection is overruled. So with -- you've made the answer there is encroachment of approximately 4 feet, so if you can figure that out, then I think you can figure the others out. You're going to figure them out.

I don't think you need an engineer. I mean, I think you can go up in the attic. If you can go up in the attic to know if there is that much encroachment, somebody can go up and measure. It takes a tape measure or your plans will tell you how big your attic is or something.

MR. GARNER: Well, we did submit the real property records and the --

THE COURT: You need to answer the questions.

MR. GARNER: Very well, Your Honor.

THE COURT: I think we talked about that last week. So here we are again.

MR. FOLEY: Your Honor, on number four, the response is, "Plaintiff has not taken a detailed inventory..."

THE COURT: You're reading.

MR. FOLEY: "Plaintiff has not taken a --"

THE COURT: I can read. Just tell me what part you want me to focus on.

MR. FOLEY: The response I asked for a list of the property that was damaged and how it was reduced in value. The response is, "I have not taken a detailed inventory of the list because an inspection has not been performed on the items."

THE COURT: Right.

MR. FOLEY: That's not responsive at all.

THE COURT: Thank you. Your action, so -- correct me if I'm wrong, but it seems to me if you're bringing an action, then you have to know what you're seeking remedies for. If you know what you're seeking remedies for, you don't enter, generally people, I don't think, file an action where they just like, let's get the action on file. Then we'll decide what it is that was damaged.

So why doesn't your client know what relief is being sought in order to respond? I mean, isn't that the gist of it? Am I missing something?

MR. GARNER: No, Your Honor. You're not.

THE COURT: So where is the list?

MR. GARNER: I will work with my client to get the list, Your Honor.

THE COURT: But, Mr. Garner, your client is the plaintiff, correct?

MR. GARNER: Yes, Your Honor.

THE COURT: And I understand -- this isn't your residence. Right?

MR. GARNER: Yes, Your Honor.

THE COURT: So you don't know -- I understand that part, but your client -- how do you know what you're seeking? I'm not trying to be facetious, but how do you know what you want if your client hasn't told you what was harmed, doesn't know the space, that's involved, doesn't know the items involved? What did your client know except that he believes he was harmed?

MR. GARNER: Well, as we said in our response to number two, the client believes 4-foot of his attic space has been encroached and the fire wall has been moved.

THE COURT: Well, then if he knows that, then he's been up there and must have measured around to know that. That's a logical conclusion.

MR. GARNER: Very well, Your Honor.

THE COURT: Well, I mean it seems kind of self-evident. Anything else that you want me --

MR. FOLEY: Yes, Your Honor. On number five, we ask for, "Please provide detailed description of -- "

THE COURT: Slow down please. Please.

MR. FOLEY: Sorry.

THE COURT: You've got to slow down. On we go.

MR. FOLEY: "Please provide a detailed description of the facts that serve as Larkin's basis for asserting that Rodriquez is likely to repeat the acts related to removing and rebuilding a wall in the attic space."

He objects because, "It's vague and is unable to discern what the plaintiff is -- unable to discern what it is asking."

And you would be able to discern it if you read your pleadings which state --

THE COURT: It's not time to argue with him. You're not going to talk to him directly. You're talking to me.

MR. FOLEY: Yes, Your Honor.

THE COURT: So what --

MR. FOLEY: Paragraph 25 on

Plaintiff's First Amended Pleading states that, "Punitive damages in an amount that will sufficiently punish defendant Rodriquez for her willful and malicious conduct and will serve as an example to prevent a repetition of such conduct in the future." So I'm specifically asking why is it likely it would be repeated in the future.

THE COURT: Okay.

MR. GARNER: May I respond?

THE COURT: You can.

MR. GARNER: That section is not speaking strictly to Holly Rodriquez. That's a punitive damages requirement to deter conduct for others. Punitive damage are deterrent not only for the defendant but society at large. To --

THE COURT: Society at large?

MR. GARNER: I mean --

THE COURT: Okay, look. Come on. Let's be practical about this. You need to answer these questions. I mean, you're the one that's asserted that there is likely to be a repeated act of removing and rebuilding. Correct?

MR. GARNER: No, Your Honor. We did not assert she's going to remove or rebuild the wall. We're saying for --

THE COURT: Give me the file.

MR. FOLEY: I have a copy.

THE COURT: So where do you think that -- where do you get the repeated alleged acts? Where do you get that from?

MR. FOLEY: In the prayer section Paragraph 25, Subsection D.

THE COURT: Thank you. That's not what he means there. Yeah. Five, I would grant that. I would grant his objection. I think that maybe not necessarily as clearly stated as possible. I think kind of in the general punitive, which is to punish the person so that nobody will ever think of doing this again. In general, not that they're going to do it again.

MR. FOLEY: I would like to limit the facts, if he would respond with some sort of a factual response.

THE COURT: Well, then you do exceptions or something like that, if that's what you need to do. Well, you know, these responses are under oath. So you got Mr. Larkins tied in to what his responses are as far as the next one on six. You know, I'm looking. I don't know if you have looked at the response that was given. I guess that you

must have written this response or somebody wrote it, Mr. Garner.

But, in fact, in number seven it says plaintiff has measured the attic space. So it kind of contradicts your fact that, well, he can't measure when he says he has.

MR. GARNER: Well, may I respond?

THE COURT: No. Answer it. Answer it, answer it, answer it.

He's locked in on these facts, Counsel, for now. So do with that what you will. If there's not a basis, there's not a basis.

MR. FOLEY: Right. We're set for trial March 9th.

THE COURT: Is it jury or non-jury?

MR. FOLEY: Jury.

THE COURT: I don't know that you're going to make it. I don't think so. How old is the case?

THE COORDINATOR: No, it's not preferentially set.

THE COURT: So you're not going on the docket. I've set four and five jury trials a week. I'll answer that; but the sanctions, look, we talked about this last week. And I don't know -- I mean,

that's the most recent response.  Do you want those back?

MR. FOLEY:  No.  You can keep those, Your Honor.

THE COURT:  I just think it's problematic.  I think it's problematic, Mr. Garner, because this is the most recent, right, that I've been filing through?

MR. FOLEY:  Yes, Your Honor.

THE COURT:  What's your basis for sanctions, sir?

MR. FOLEY:  Just that they were -- the sole objection was overruled and the Court ordered him to respond and everything was non-responsive.  We were here last week.  He said he would make a good faith effort.  He didn't make a good faith effort. The same objections, invalid objections, are there. Says he can't understand any of the questions that we asked.

For example, on seven he says that it's vague and he's not able to discern what we're asking.  It's not.  It's not vague.

THE COURT:  Well, he's answered.  I mean, I think -- I guess.  I think the first sentence is the answer.  I don't know that it's detailed

but --

MR. FOLEY: So on request for production is a separate issue. I went back and actually counted last week because you asked how many did he respond to. There is a total of 52 requests for production and he did not respond to 29 of them. So it was slightly over half. On this one, I'll just bring your attention, number seven asks for written rental agreement between Whitney Larkin and Hugh Larkin, and he says it's irrelevant. Not going to produce it.

THE COURT: Number seven you said?

MR. FOLEY: Seventeen, Your Honor.

THE COURT: You know I think a copy of the lease, if any. If there's no lease, there is no lease. Is there a lease or not? Just answer that.

MR. GARNER: Yes, Your Honor.

THE COURT: Then give it to him.

MR. GARNER: Yes. I don't know if there is a lease or not. I will give it to him.

THE COURT: Mr. Garner, with all due respect, I mean, that's just -- it worries me the answer to so many things are, "I don't know that yet." I've got -- I'm on my second file. A lot of paper's been flowing, and that concerns me. You knew

this was going -- we talked about this last week, and the answer -- I think there is some stone walling on the answers. I'll be perfectly honest with you.

MR. GARNER: Yes, Your Honor.

THE COURT: Here's what I'm going to do --

MR. FOLEY: Your Honor?

THE COURT: Yes?

MR. FOLEY: Sorry to interrupt. I asked him if there was a written lease in requests for admissions, and he admitted that there was. So that's how I know that it exists, and I want it.

THE COURT: I understand. You're indignant and just distressed about this, and I get that. Mr. Garner, you know, you're the face of the plaintiff here. So your client's not here, I don't think. So I can't say, Mr. Larkin, you're not helping your attorney here. That's what I would be saying though to him.

MR. GARNER: Yes, Your Honor.

THE COURT: It's now time -- as an attorney, we all face that time where you have to have that discussion which is, you're hurting me now. We have got -- now, if we have this, we've got to do this. He admits he took measurements, and yet you

say shouldn't you take the measurement. You need an engineer. Well, he took the measurements so apparently he knows how to do this.

MR. FOLEY: One more issue.

THE COURT: What?

MR. FOLEY: It has to do with attorney/client privilege. I requested documents between Mr. Larkin and his daughter, Whitney Larkin; and she's a licensed attorney, and also the tenant. So I received a blanket objection that anything they say or do is covered by the attorney/client privilege. And therefore he's refusing to produce any of those documents. That's specific to requests for production --

THE COURT: Thank you. Mr. Garner?

MR. GARNER: May I respond to that?

THE COURT: Uh-huh.

MR. GARNER: Your Honor, Mr. Larkin talked to Ms. Larkin about this building in preparation for litigation. There is a privilege with that if --

THE COURT: She's not his attorney of record.

MR. GARNER: He went to her for legal advice, Your Honor. And, in turn --

THE COURT: To his tenant?

MR. GARNER: Yes, Your Honor.

THE COURT: Well, what we're going to do on that, then, if you want, Mr. Garner, is you're going to get me -- to have assert a privilege log then. You don't get to just say privilege. You're going to produce every one of those documents that allegedly is privileged, and I'm going to do an in camera viewing of every one of those documents, and I will determine what is privileged and what is not, under the *Rules of Civil Procedure*.

So get your privilege log ready.

MR. GARNER: Absolutely, Your Honor.

THE COURT: And read the rules maybe again to ascertain what privilege attaches.

MR. GARNER: Yes, Your Honor.

THE COURT: So you're not going to trial in March or whenever, March 9th. You're not making that, but -- okay. Court is going to do the following; the Court hereby is going to treat motion for sanctions as a motion. I know there's already been one motion to compel, but I assume -- is it, from what I hear, you're basing the sanctions on the failure to comply with the motion to compel?

MR. FOLEY: Correct, Your Honor. It's

that and just Rule 215.1(b) that you don't have to have a violation and order to award sanctions.

THE COURT: I know. Have you done a motion to compel already?

MR. FOLEY: Yes, Your Honor, I have. And it was granted.

THE COURT: Okay.

MR. GARNER: Not for the responses, Your Honor. He has not.

THE COURT: What was it for? To answer discovery?

MR. GARNER: Yes, Your Honor.

THE COURT: And did I do what? The 350 carry over, did I impose that?

MR. FOLEY: That, I don't recall. There's only one objection at that time. So the Court overruled the one objection. All the new ones appeared January 29th.

THE COURT: Here we are on this a month later.

MR. FOLEY: Right. So we had from October until now to get this fixed.

THE COURT: I guess what is of interest to me, before I make a decision, is how much conversation -- Mr. Garner, how much have you talked

to -- Counsel, your last name?

MR. FOLEY: Foley, Your Honor.

THE COURT: Foley. So sorry. Mr. Foley, how much have you talked to him about this? Are you just sending these objections and that's that? I answered?

MR. GARNER: Well, Your Honor, I came into the case on the 27th.

THE COURT: Of January?

MR. GARNER: Yes, Your Honor.

THE COURT: Who was the attorney of record before then?

MR. GARNER: Timothy Rodman, I believe is his name.

THE COURT: So -- but Ms. Larkin's never been the attorney of record in here?

MR. GARNER: Not of record, no, Your Honor, but --

THE COURT: You take it on the way you found it.

MR. GARNER: Understood, Your Honor.

THE COURT: You haven't responded. I'm disturbed. I'm disturbed by the lack of communication. I'm disturbed by the blanket privilege, privilege, privilege I think that's being

thrown out.

MR. GARNER: Well, Your Honor --

THE COURT: Yeah? Yes?

MR. GARNER: I've had two telephone conversations with Mr. Foley, one of which was I think he was letting me know his position on the previous objections. I let him know I disagreed, let him know that we would be seeking motion to clarify that previous order because we thought it was protected.

The second conversation we had was in relation to the Motion to Clarify and the Motion for Sanctions. So --

THE COURT: These are pretty easy questions. And the responses, I don't find to be -- I mean, I think you're just -- again, just kind of saying, that he's measured the space, but I'm not going to tell you in contradiction to tell me the various spaces. Unaware of the answer to the other questions, an engineer or expert to evaluate the space. You said you took measurements.

It is things like that lead me to believe road blocks are being thrown up. That's not the essence of discovery. It's costing money to come down here to get these answers. If your client

doesn't have the answers, then, well, that raises another interesting thing that you have to say that versus it's privilege. It's too long. It's too many.

So allegedly you're not going to let them see any basis of the daughter talking to her father about that because it's privileged, every communication they had about this? Is that your general theory?

*MR. GARNER:* That is my theory.

*THE COURT:* That's your theory. Okay. Then here's my theory, here's my response and judgment in this case; the Court does grant sanctions, conditional sanctions, which is, you will fully respond to these. If there is a privilege, you will produce a privilege log as required by the *Rules of Civil Procedure.* You will do that on or before noon on Wednesday, March the 4th. That is one week's time to answer these.

Mr. Garner, the Court tentatively awards attorney's fees which this Court finds to be reasonable and necessary in the sum of $500 for the preparation of yet another motion to try to get these responses. The Court finds that many of the objections are just repeated over and over again,

which leads this Court to believe that there's not really an objection specific to the production request -- the interrogatory -- that they're just being repeated over and over again. And no information is being repeated.

This is discovery. I'm sure you're aware of that, Mr. Garner, that discovery -- it doesn't necessarily mean it's admissible; but they get to discover. So if you produce answers to these, then I'm not going to impose the $500. If you do not respond, if it comes down to these are the same responses over again, then I will allow the $500 as a sanction. So you've got a week. Tell your clients time is now.

MR. GARNER: Yes, Your Honor.

THE COURT: Okay? Keep me advised. Get me an order to that effect. Yes?

MR. MCKEE: Would defendants -- would you allow defendants to reurge their Motion for Summary Judgment you previously denied?

THE COURT: No.

MR. MCKEE: Thank you, Your Honor.

THE COURT: No. But what I need is, I need you to fax in an order to that effect, by noon you will have it delivered to them either in person

by noon on Wednesday March the 4th, sir, or you will have a fax receipt that shows that it was received by facsimile. Or if you scan them and send them, I need something.

If not, if you fail to respond by that time and/or if the responses are similar to the responses that are on file now, the latest responses, then I will -- then the $500 will no longer be prospective. That will be an award. Okay?

MR. GARNER: Yes, Your Honor.

THE COURT: That will be paid within 30 days of the date. So that would be paid by Friday, April the 3rd. It will be due, if in fact you don't comply with this Court's order.

MR. GARNER: Okay. May I ask one question?

THE COURT: Yes, sir.

MR. GARNER: Is e-mail okay?

THE COURT: Talk with him, whichever is the best because it's not to me. It's to him.

MR. GARNER: Understood, Your Honor.

THE COURT: So you all talk. It's an electronic age. I think that we're not electronic here because Mr. Stanart doesn't have the ability apparently to do that. But I would prefer

*February 24, 2015*

electronic. It's just easier for me to work with.

It's easier for you to prepare and accept. You talk

about that.

*(Proceedings adjourn).*

KAREN S. BERNHARDT, C.S.R.
(713) 368-6678

Reporter's Certificate
February 24, 2015

*STATE OF TEXAS*

*COUNTY OF HARRIS*

*I, Karen S. Bernhardt, Official Court Reporter in and for the County Civil Court at Law No. 4 of Harris County, State of Texas, do hereby certify that the above and foregoing contains a true and correct transcription of all portions of evidence and other proceedings requested in writing by counsel for the parties to be included in this volume of the Reporter's Record in the above-styled and numbered cause, all of which occurred in open court or in chambers and were reported by me.*

*I further certify that this Reporter's Record of the proceedings truly and correctly reflects the exhibits, if any, offered by the respective parties.*

*I further certify that the total cost for the preparation of this Reporter's Record is $175.50 and was paid by Whitney Larkin*

*WITNESS MY OFFICIAL HAND this the 20th day of April, 2015.*

*/s/Karen S. Bernhardt*
*KAREN S. BERNHARDT*
*Texas CSR 1601*
*Official Court Reporter*
*County Civil Court at Law No. 4*
*Harris County, Texas*
*201 Caroline, Room 740*
*Houston, Texas  77002*
*Telephone:  (713) 368-6678*
*Expiration:  12/*

## THE WEAVER LAW FIRM
1800 BERING DR.
SUITE 305
HOUSTON, TEXAS 77057
(713) 572-4900
FAX (713) 626-9708
www.WeaverLawyers.com

February 24, 2015

Judge Roberta Lloyd                                   *Via Facsimile: 713-368-7131*
Harris County Civil Court at Law No. 4
201 Caroline, 5th Floor
Houston, Texas 77002

Re:     Cause No. 1047713; *Hugh Larkin vs. Holly Rodriguez and Riverwalk Council of Co-
        Owners, Inc.*; In County Civil Court at Law No. Four (4) of Harris County, Texas.

Dear Judge Lloyd:

        Please find attached Holly Rodriguez' proposed Order Granting Holly Rodriguez'
Motion for Sanctions against Hugh Larkin and Famose Garner.

        Mr. Garner and I were able to communicate regarding the contents of the proposed order;
however we were unable to reach a resolution regarding the form and content of the order to be
submitted to the Court. Accordingly, the proposed order is not submitted by agreement.

        Mr. Garner and I were able to agree to submit Holly Rodriguez' proposed order to you
with a respectful request for your input, including your review and approval or removal of the
Court's findings and whether the Court sustained Mr. Larkin's objection to Interrogatory No. 5.
Further, Mr. Garner and I respectfully request that the Court strike, amend, and/or re-write any
portions of the proposed order to most accurately represent the Court's ruling and instructions
from the hearing earlier today.

        Mr. Garner's approval of this letter is indicated by his signature below.

        Should you have any questions or comments regarding the contents of this letter, please
do not hesitate to contact my office.

                                            Sincerely,

                                            THE WEAVER LAW FIRM

                                            James Hamilton Foley
                                            JFoley@WeaverLawyers.com

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 4/21/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy

Donna M. Hernandez



I agree to the contents of this letter.

_____
Amose Garner

cc:     Shawn Robert McKee                    *Via E-mail: srm@lambrightlaw.com*

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 4/21/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____Deputy
Donna H. Hernandez



# THE WEAVER LAW FIRM

1800 BERING DR.
SUITE 305
HOUSTON, TEXAS 77057
(713) 572-4900
FAX (713) 626-9708
www.WeaverLawyers.com

## FAX TRANSMISSION COVER SHEET

**Attention:**   Honorable Judge Roberta Lloyd

**To Fax #:**   713-368-7131

**Date:**   February 24, 2015

**Pages including cover sheet: 8**

**Re:**   Cause No. 1047713; *Hugh Larkin vs. Holly Rodriguez and Riverwalk Council of Co-Owners, Inc.*; In County Civil Court at Law No. Four (4) of Harris County, Texas.

      Please find the attached correspondence and proposed Order Granting Motion for Sanctions.

Thank you,

**CONFIDENTIAL MATERIAL**

The information contained in this transmission is confidential and is intended for the use of the individual or entity named above. This information may also be legally privileged. This transmission is sent in trust, for the sole purpose of delivery to the intended recipient. If you have received this transmission in error, you are notified that any use, dissemination, distribution, or reproduction of this transmission is prohibited. If you are not the intended recipient, please notify us by telephone at 713-572-4900.

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 4/21/2015
**Stan Stanart, County Clerk**
Harris County, Texas



_____ Deputy

Donna M. Hernandez



| | | |
|---|---|---|
| HUGH LARKIN | § | IN THE COUNTY CIVIL COURT |
| | § | |
| vs. | § | AT LAW NO. FOUR (4) |
| | § | |
| HOLLY RODRIGUEZ & RIVERWALK | § | |
| COUNCIL OF CO-OWNERS, INC. | § | OF HARRIS COUNTY, TEXAS |

## ORDER GRANTING HOLLY RODRIGUEZ' MOTION FOR SANCTIONS AGAINST HUGH LARKIN AND FAMOSE GARNER

On this day came to be heard *Holly Rodriguez's Motion for Sanctions against Plaintiff and Plaintiff's Attorney*, and the Court after considering the motion, the response, if any, and arguments of counsel is of the opinion that the motion is well-taken and should be GRANTED. In support thereof, the Court finds good cause exists to sanction HUGH LARKIN and his attorney, FAMOSE GARNER, because of the Court finds the following:

1. On January 9, 2015, the Court overruled HUGH LARKIN's sole objection to HOLLY RODRIGUEZ' First Set of Requests for Production and First Set of Interrogatories;

2. HUGH LARKIN's responses and supplemental responses to Interrogatories Nos. 2, 4, 5, 6 and 7 are non-responsive, inadequate, and fail to comply with the TEXAS RULES OF CIVIL PROCEDURE;

3. HUGH LARKIN's responses and supplemental responses to Interrogatories Nos. 2, 4, 5, 6 and 7 contain invalid objections according to the TEXAS RULES OF CIVIL PROCEDURE;

4. HUGH LARKIN's responses to Requests for Production Nos. 5, 13, 14, 22, 30 40, 41, 43, 50, and 52 contain assertions of attorney-client and/or attorney work-product privileges;

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 4/21/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy

Donna M. Hernandez



5. HUGH LARKIN's responses to Requests for Production Nos. 17, 18, 35, 36, 37, 43, 46, 47, and 48 each contains one or more invalid objections according to the TEXAS RULES OF CIVIL PROCEDURE;

6. HUGH LARKIN's responses to Requests for Admissions Nos. 22 and 23 admit to the existence of a written lease agreement between HUGH LARKIN, as landlord, and WHITNEY LARKIN, as tenant;

7. HUGH LARKIN's responses to Requests for Admissions Nos. 17 and 18 admit to the existence of a written attorney-client representation agreement between WHITNEY LARKIN and the Silberman Law Firm;

8. HUGH LARKIN's responses to Requests for Admissions Nos. 40, 41, 42, and 43 admit to written and e-mail communications between WHITNEY LARKIN and both Timothy Rodman and Philip Silberman; and

9. HUGH LARKIN's responses and supplemental to the Requests for Production and Interrogatories specifically identified in this Order failed to comply with the TEXAS RULES OF CIVIL PROCEDURE, were made with blatant disregard for the judicial process, and wasted both the Court's and opposing counsel's time and resources.

THEREFORE, it is **ORDERED, ADJUDGED,** and **DECREED** that:

1. HUGH LARKIN's objections, any and all, including any objections not yet asserted, to Interrogatories Nos. 2, 4, 5, 6, and 7 are hereby OVERRULED;

2. HUGH LARKIN's supplemental responses to Interrogatories Nos. 2, 4, 5, 6, and 7 are non-responsive to the questions presented;

3. HUGH LARKIN's objections, any and all, including any objections not yet asserted, to Requests for Production Nos. 17, 18, 35, 36, 37, 43, 46, 47, and 48 are hereby

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 4/21/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____Deputy

Donna H. Hernandez



OVERRULED, and HUGH LARKIN shall produce all responsive documents to the aforementioned requests by 5:00 p.m. on Wednesday, March 4, 2015;

4. HUGH LARKIN and his attorney, Famose Garner, shall fully and completely respond to Interrogatories Nos. 2, 4, 5, 6, and 7 by 5:00 p.m. on Wednesday, March 4, 2015;

5. HUGH LARKIN and his attorney, Famose Garner, shall produce a privilege log for each assertion of attorney-client privilege, attorney work-product privilege, and any other privilege asserted with regard to documents responsive to Requests for Production Nos. 5, 13, 14, 22, 30 40, 41, 43, 50, and 52, which shall include a specific statement of the privilege asserted, identification of each document withheld by date, author, and subject matter (without disclosing its contents), and a copy of each document withheld under any claim of privilege;

6. HUGH LARKIN and his attorney, Famose Garner, shall serve the privilege log (without copies of the documents withheld) upon the opposing counsel by 5:00 p.m. on Wednesday, March 4, 2015; and

7. HUGH LARKIN and his attorney, Famose Garner, shall serve the aforementioned privilege log (specifically including copies of each document withheld under any claim of privilege) to the Court by the Court by 5:00 p.m. on Wednesday, March 4, 2015, by the Court's preferred method of transmission, upon receipt of which the Court will conduct an *in camera* review to determine the validity of each privilege asserted.

**IT IS FURTHER ORDERED, AJUDGED, and DECREED** that:

1. HOLLY RODRIGUEZ' Motion for Sanctions against HUGH LARKIN and HUGH LARKIN's attorney, Famose Garner, is hereby GRANTED;

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 4/21/2015
**Stan Stanart, County Clerk**
Harris County, Texas



_____Deputy



2. sanctions in the amount of $500.00 are hereby conditionally awarded to HOLLY RODRIGUEZ against HUGH LARKIN and HUGH LARKIN's attorney, Famose Garner, jointly and severally, if HUGH LARKIN and HUGH LARKIN'S attorney, Famose Garner, fail to comply with this Order by 5:00 p.m. on Wednesday, March 4, 2015;

3. if HUGH LARKIN and HUGH LARKIN's attorney, Famose Garner, comply with the terms of this Order by the required deadlines, the award of $500.00 as sanctions shall no longer apply;

4. if HUGH LARKIN and HUGH LARKIN's attorney, Famose Garner, fail to comply with the terms of this Order, the award of $500.00 must be paid to HOLLY RODRIGUEZ, without the necessity of an additional Order from this Court, in the form of a cashier's check, payable to HOLLY RODRIGUEZ in the amount of $500.00, delivered to THE WEAVER LAW FIRM, 1800 Bering Drive, Suite 305, Houston, Texas 77057, ~~by 5:00 p.m. on Friday, April 3, 2015.~~ *on or before Thursday, April 23, 2015, by 5:00 PM, CDT.*

SIGNED this *27* day of *February*, 2015.

_____
JUDGE PRESIDING

FILED
2015 FEB 27 PM 1:41

Stan Stanart
COUNTY CLERK
HARRIS COUNTY, TEXAS

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 4/21/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Donna M. Hernandez

COUNTY CIVIL COURT AT LAW NO. 4
OF HARRIS COUNTY
TEXAS

APPROVED:

THE WEAVER LAW FIRM

/s/ Richard D. Weaver
Richard D. Weaver
Texas Bar No. 24047083
rweaver@weaverlawyers.com
James Hamilton Foley
Texas Bar No. 24059764
jfoley@weaverlawyers.com
1800 Bering Drive, Suite 305
Houston, Texas 77057
(713) 572-4900 (Telephone)
(713) 626-9708 (Facsimile)

**ATTORNEYS FOR DEFENDANT,
HOLLY RODRIGUEZ**

AGREED TO AND APPROVED:

Famose Garner
Texas Bar No. 24074252
10101 Southwest Freeway, Suite 400
Houston, Texas 77074
(832) 722-0881 (Telephone)
(713) 481-0205 (Facsimile)

**ATTORNEY FOR PLAINTIFF,
HUGH LARKIN**

RECORDER'S MEMORANDUM:
At the time of recordation, this instrument was
found to be inadequate for the best photographic
reproduction because of illegibility, carbon or
photo copy, discolored paper, etc. All blockouts,
additions and changes were present at the time
the instrument was filed and recorded.

PAGE 08/08                    LAW OFFICE                    7136269708        06:05    02/24/2015

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 4/21/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____Deputy
Donna M. Hernandez



CAUSE NO. 1047713

| | |
|---|---|
| HUGH LARKIN<br>*Plaintiff* | § IN THE COUNTY CIVIL COURT<br>§<br>§ |
| V. | § AT LAW NO. 4<br>§ |
| HOLLY RODRIGUEZ & RIVERWALK<br>COUNCIL OF CO-OWNERS, INC.<br>*Defendants* | §<br>§<br>§<br>§ OF HARRIS COUNTY, TEXAS |

ORDER

Having reviewed the privilege log and documents submitted by Plaintiff, the Court finds that ~~all~~ *none of the* correspondence, agreements, ~~or~~ *and* other materials submitted are privileged. ~~Plaintiff submitted confidential communication between Plaintiff, his agents,~~ *insomuch as None of the materials are Communications between Plaintiff Hugh Larkin* and his attorneys that Plaintiff made for the purpose of acquiring and rendering legal *and his attorney of record, Philip Silberman. Further,* ~~services. In re Ford Motor Co., 988 S.W.2d 714, 718 (Tex. 1998). In addition, Plaintiff~~ *by disclosing all these communications to someone* ~~asserted work-product privilege objections to Defendant Rodriguez' discovery requests.~~ *outside of the privilege (i.e., Whitney Larkin), Plaintiff* ~~The Court finds that this material is privileged pursuant to Texas Rule of Civil Procedure.~~ *Hugh Larkin has voluntarily waived any such privilege.* 192. Therefore, the Court ~~sustains~~ *overrules* all of Plaintiff's objections asserting privilege to Defendant Rodriguez' discovery requests.

IT IS SO ORDERED.

This ____ day of March, 2015.

Judge Roberta Lloyd

**RECORDER'S MEMORANDUM:**
At the time of recordation, this instrument was found to be inadequate for the best photographic reproduction because of illegibility, carbon or photo copy, discolored paper, etc. All blockouts, additions and changes were present at the time the instrument was filed and recorded.

FILED
2015 MAR 18 AM 8:18
Stan Stanart
COUNTY CLERK
HARRIS COUNTY, TEXAS

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 4/21/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Donna M. Hernandez



CAUSE NO. 1047713

| HUGH LARKIN | § | IN THE COUNTY COURT |
| Plaintiff, | § | |
| vs. | § | |
| | § | AT LAW NO. FOUR (4) |
| HOLLY RODRIGUEZ & RIVERWALK | § | |
| COUNCIL OF CO-OWNERS, INC., | § | |
| Defendants. | § | HARRIS COUNTY, TEXAS |

**PLAINTIFF'S MOTION FOR RECONSIDERATION OF ORDER OVERRULING PLAINTIFF'S ASSERTIONS OF PRIVILEGE TO DEFENDANT'S DISCOVERY REQUESTS**

TO THE HONORABLE JUDGE ROBERTA LLOYD:

Hugh Larkin, Plaintiff ("Mr. Larkin"), in the above styled case respectfully requests the Court to reconsider the order overruling assertions of privilege to Holly Rodriguez', Defendant, discovery requests and shows the following:

**NATURE AND STAGE OF PROCEEDINGS**

1) On January 29, 2015, Mr. Larkin responded to the Defendant's discovery requests. *See* Exhibit "A" attached hereto.

2) On March 4, 2015, Mr. Larkin asserted privilege and produced a privilege log. Mr. Larkin produced a copy of all documents to the Court and the Court conducted an *in camera* inspection. *See* Exhibit "B" attached hereto.

3) On March 18, 2015, this Court signed and issued an order overruling all of Mr. Larkin's objections and assertions of privilege regarding the discovery requests. *See* Exhibit "C" attached hereto.

4) Mr. Larkin asks this Court to reconsider its ruling for two reasons. First, Mr. Larkin appointed Whitney Larkin as his representative. Texas Rule of Evidence 503 codifies attorney-client privilege and extends privilege to her; and Second, Ms. Larkin is a licensed attorney and her communications relating to the instant suit are protected. *See* Ms. Larkin's affidavit attached hereto as Exhibit "D."

1

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 4/21/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy

Donna M. Hernandez



## ARGUMENTS AND AUTHORITY

I.    **Mr. Larkin appointed Whitney Larkin as his representative and therefore she is covered by attorney-client privilege.**

The attorney-client privilege attaches to confidential communication made to facilitate the rendition of professional legal services to the client between a representative of the client and the client's lawyer or a representative of the lawyer. *See* Tex. R. Evid. 503(b)(1). A "representative of the client" may be any person "having authority to seek legal services on behalf of the client or any person who sends or receives confidential information for the purpose of obtaining or effectuating legal services on behalf of the client." *See* Tex. R. Evid. 503(a)(2)(A).

Texas Rules of Evidence 503(5) defines confidential communication as information "not intended to be disclosed to third persons" unless the disclosure is made in furtherance of legal services or the third person is necessary to transmit the communication on behalf of the client.

A person with a power of attorney is a person that is covered with privilege. In *In re McCall*, 2002 Tex. App. LEXIS 9373 (Tex. App. El Paso June 20, 2002), a stepdaughter sought discovery that the stepmother claimed was covered by the attorney-client privilege. The trial court held that privilege only attached to the stepmother's communication and that the stepdaughter was outside of the privilege. *Id.* The Eighth District Court of Appeals granted mandamus and held that an attorney-client relationship existed among the attorney, the stepmother, and the stepdaughter via a power of attorney. *Id.* at 1. The stepdaughter executed a power of attorney for her stepmother to perform business transactions. *Id.* The stepmother consulted and retained an attorney on behalf of the stepdaughter for certain legal services. *Id.* at 2. The stepdaughter ultimately severed the agency relationship with the stepmother and subpoenaed legal invoices between the attorney and the stepmother. *Id.* The trial court held that no attorney-client relationship existed between the stepdaughter and the attorney. *Id.* at 3. The trial court also held that the invoices between the stepmother and the attorney were protected from the stepdaughter under the attorney-client privilege. *Id.* The appellate court overruled the trial court's ruling that no attorney-client relationship existed and reasoned that the power of attorney created an agency relationship between the stepdaughter

2

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 4/21/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy

Donna M. Hernandez



and the stepmother. *Id.* at 4. The Court held that, because the stepmother was the stepdaughter's agent, the attorney-client relationship existed between the stepdaughter, stepmother, and any firm that the stepmother consulted in her capacity as agent. *Id.* at 6.

Like the parties in *McCall*, Hugh Larkin executed a power of attorney for his daughter, Whitney Larkin, to handle his business affairs related to the property at issue in this case. *See* Exhibit "E" attached hereto. Therefore, Ms. Larkin is Mr. Larkin's representative. Ms. Larkin contacted and retained an attorney on behalf of Mr. Larkin in her capacity as his agent. Thus, "an attorney-client relationship was created between [Mr. Larkin] and any law firm that [Ms. Larkin] consulted in her capacity as [his] agent." *Id.* at 6. Similar to the parties in *McCall* whose attorney-client privilege extended to the representative of the client, Mr. Larkin's attorney-client privilege extends to Ms. Larkin. Mr. Larkin shared communications with Ms. Larkin in furtherance of the subject matter of this suit. Hence, as Mr. Larkin's agent, any communications shared with her or from her to an attorney on Mr. Larkin's behalf is confidential and protected by the attorney-client privilege.

II. **Any confidential communication shared by Ms. Larkin, a licensed attorney, with Phillip Silberman, a licensed attorney, on behalf of Mr. Larkin does not waive the attorney-client privilege.**

In *In re AEP Tex. Cent. Co.*, 128 S.W.3d 687 (Tex. App.—San Antonio 2003), an electric company tried to retrieve a memorandum prepared by an outside law firm that was mistakenly disclosed to opposing counsel. The trial court held that the memorandum was not privileged. *Id.* The appellate court granted mandamus and held the memorandum was privileged communication. *Id.* at 692. The in-house counsel for the electric company hired an outside law firm to analyze their potential claims. *Id.* at 689. The outside law firm submitted a legal memorandum to the electric company addressing the potential claims. *Id.* The trial court denied the electric company's motions to compel the return of the document and held that the document was not privileged. *Id.* at 690. The appellate court held that, since the memorandum was transferred from one attorney to another attorney, both hired for the same reason, the memorandum was privileged. *Id.* at 692.

3

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 4/21/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Donna M. Hernandez



Similar to the in-house counsel for the electric company in *AEP* who hired outside counsel, Ms. Larkin sought outside counsel to assist her in matters directly related to Mr. Larkin and the property the subject of this suit. Ms. Larkin is a licensed attorney in the State of Texas. She acted on behalf of Mr. Larkin in furtherance of his legal representation. All of the communications shared by Ms. Larkin, an attorney, with Mr. Silberman, another attorney, were shared for the same reason. Specifically, the communications between Ms. Larkin and Mr. Silberman were to prepare for litigation on behalf of Mr. Larkin. Therefore, all of the communications between Ms. Larkin and Mr. Silberman are protected by attorney-client and work-product privileges.

## PRAYER

THEREFORE, Hugh Larkin respectfully requests that the Court reconsider its original order overruling all the assertions of privilege and any other relief Mr. Larkin may be entitled.

Respectfully submitted,

/s/ Famose T. Garner
Famose T Garner
State Bar No. 24074252
10101 Southwest Freeway, Ste. 400
Houston, Texas 77074
(832) 722-0881
(713) 481-0205 (Fax)
famosegarner@gmail.com
**ATTORNEY FOR HUGH LARKIN**

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that a true and correct copy of the foregoing Motion was served via facsimile on all counsel and parties of record in accordance with the Texas Rules of Civil Procedure.

Shawn Robert McKee
srm@lambrightlaw.com
Attorney for Riverwalk Council
of Co-Owners, Inc.

Richard D. Weaver
rweaver@weaverlawyers.com
Attorney for Holly Rodriguez

/s/ Famose T. Garner
Famose T. Garner

4

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 4/21/2015
**Stan Stanart, County Clerk**
Harris County, Texas



_____ Deputy



**CAUSE NO. 1047713**

| | | |
|---|---|---|
| HUGH LARKIN | § | IN THE COUNTY CIVIL COURT |
| | § | |
| vs. | § | AT LAW NO. FOUR (4) |
| | § | |
| HOLLY RODRIGUEZ & RIVERWALK | § | |
| COUNCIL OF CO-OWNERS, INC. | § | OF HARRIS COUNTY, TEXAS |

## HOLLY RODRIGUEZ' FIRST SET OF REQUESTS FOR PRODUCTION TO PLAINTFF, HUGH LARKIN

To: Holly Rodriguez, Plaintiff, by and through her attorney of record, Richard Weaver

Hugh Larkin, Plaintiff, responds to this Set of Request for Production propounded by Holly Rodriguez pursuant to Rule 197 of the Texas Rules of Civil Procedure.

Respectfully submitted,

/s/ Famose T. Garner

Famose T. Garner

TBN 24074252

10101 Southwest Freeway, Ste. 400

Houston, Texas 77074

(832) 722-0881

(713) 481-0205 Fax

famosegarner@gmail.com

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 4/21/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy

Donna M. Hernandez



## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was forwarded to all interested parties by service on their attorneys of record *via* electronic email on this 4th day of March, 2015, as follows:

Richard Weaver         ***Via Electronic Email:*** rweaver@weaverlawyers.com
THE WEAVER LAW FIRM
1800 Bering Drive, Suite 305
Houston, Texas 77057


Casey Jon Lambright     ***Via Electronic Email:*** srm@lambrightlaw.com
Shawn Robert McKee
LAMBRIGHT & ASSOCIATES
2603 Augusta, Suite 1100
Houston, Texas 77057


                                                  /s/ Famose T. Garner

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 4/21/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy

Donna M. Hernandez



# HOLLY RODRIGUEZ' FIRST SET OF REQUESTS FOR PRODUCTION TO PLAINTFF, HUGH LARKIN

1. For the period of July, 1 2008 to the present, please produce a copy of any appraisal performed on Unit 2070.

**RESPONSE:** None.

2. For the period of July 1, 2008 to the present, please produce copies of any photographs, videos, and any other forms of graphic images that depict the Attic Space.

**RESPONSE:** See attached.

3. For the period of July 1, 2008 to the present, please produce a copy of any survey that was performed on Unit 2070.

**RESPONSE:** None.

4. For the period of March 1, 2014 to the present, produce copies of all written correspondence, including but not limited to e-mails, text messages, letters and/or other written communications, exchanged between LARKIN and RODRIGUEZ that relate in any way to Holly Rodriguez, Unit 2070, Unit 2071, and/or the Attic Space.

**RESPONSE:** None.

5. For the period of March 1, 2014 to the present, produce copies of all written correspondence, including but not limited to e-mails, text messages, letters and/or other written communications, exchanged between LARKIN and WHITNEY LARKIN that relate in any way to Holly Rodriguez, Unit 2070, Unit 2071, and/or the Attic Space.

**RESPONSE:** Objection; Plaintiff asserts attorney client privilege. Plaintiff has produced a privilege log.

6. For the period of March 1, 2014 to the present, produce copies of all written correspondence, including but not limited to e-mails, text messages, letters and/or other written communications, exchanged between LARKIN and RIVERWALK that relate in any way to Holly Rodriguez, Unit 2070, Unit 2071, and/or the Attic Space.

**RESPONSE:** See attached.

7. For the period of March 1, 2014 to the present, produce copies of all written correspondence, including but not limited to e-mails, text messages, letters and/or other written communications, exchanged between LARKIN and PRINCIPAL MANAGEMENT that relate in any way to Holly Rodriguez, Unit 2070, Unit 2071, and/or the Attic Space.

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 4/21/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____Deputy



**RESPONSE:** See attached.

8. For the period of March 1, 2014 to the present, produce copies of all written correspondence, including but not limited to e-mails, text messages, letters and/or other written communications, exchanged between LARKIN and JDH that relate in any way to Holly Rodriguez, Unit 2070, Unit 2071, and/or the Attic Space.

**RESPONSE:** None.

9. For the period of August 1, 2008 to the present, produce copies of all written correspondence, including but not limited to e-mails, text messages, letters and/or other written communications, that reference and/or relate in any way to the Attic Space.

**RESPONSE:** See attached.

10. For the period of March 1, 2014 to the present, produce copies of all written correspondence, including but not limited to e-mails, text messages, letters and/or other written communications, exchanged between WHITNEY LARKIN and RIVERWALK that relate in any way to Holly Rodriguez, Unit 2070, Unit 2071, and/or the Attic Space.

**RESPONSE:** See attached.

11. For the period of March 1, 2014 to the present, produce copies of all written correspondence, including but not limited to e-mails, text messages, letters and/or other written communications, exchanged between WHITNEY LARKIN and PRINCIPAL MANAGEMENT that relate in any way to Holly Rodriguez, Unit 2070, Unit 2071, and/or the Attic Space.

**RESPONSE:** See attached.

12. For the period of March 1, 2014 to the present, produce copies of all written correspondence, including but not limited to e-mails, text messages, letters and/or other written communications, exchanged between WHITNEY LARKIN and JDH that relate in any way to Holly Rodriguez, Unit 2070, Unit 2071, and/or the Attic Space.

**RESPONSE:** None.

13. For the period of March 1, 2014 to the present, produce copies of all written correspondence, including but not limited to e-mails, text messages, letters and/or other written communications, exchanged between WHITNEY LARKIN and Timothy Rodman that relate in any way to Holly Rodriguez, Unit 2070, Unit 2071, and/or the Attic Space.

**RESPONSE:** Objection; Plaintiff asserts attorney client privilege. Plaintiff has produced a privilege log.

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 4/21/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy

Donna M. Hernandez



14. For the period of March 1, 2014 to the present, produce copies of all written correspondence, including but not limited to e-mails, text messages, letters and/or other written communications, exchanged between WHITNEY LARKIN and Philip Silberman that relate in any way to Holly Rodriguez, Unit 2070, Unit 2071, and/or the Attic Space.

RESPONSE: Objection; Plaintiff asserts attorney client privilege. Plaintiff has produced a privilege log.

15. For the period of March 1, 2014 to the present, produce copies of all written correspondence, including but not limited to e-mails, text messages, letters and/or other written communications, exchanged between LARKIN and RODRIGUEZ that relate in any way to Holly Rodriguez, Unit 2070, Unit 2071, and/or the Attic Space.

RESPONSE: None.

16. For the period of August 28, 2008 to the present, produce copies of all written correspondence, including but not limited to e-mails, text messages, letters and/or other written communications, exchanged between LARKIN and RIVERWALK that relate in any way to in any way to deed restriction violations.

RESPONSE: Produced in Request No. 6.

17. For the period of August 28, 2008 to the present, please produce a copy of any written rental agreement or lease agreement related to Unit 2070.

RESPONSE: See attached.

18. For the period of August 28, 2008 to the present, produce a copy of any tax statement related to Unit 2070 that shows the square footage of improvements subject to taxation by the applicable taxing authority.

RESPONSE: None.

19. For the period of June 1, 2008 to the present, produce a copy of any document related to MLS listing for the sale Unit 2070, including any documents serving as an advertisement for the sale of Unit 2070.

RESPONSE: See attached.

20. For the period of June 1, 2008 to the present, produce a copy of the "Seller's Disclosure of Property Condition" that LARKIN received from the seller of Unit 2070 prior to purchasing Unit 2070.

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 4/21/2015
**Stan Stanart, County Clerk**
Harris County, Texas



_____Deputy
Donna M. Hernandez

**RESPONSE:** None.

21. For the period of June 1, 2008 to the present, produce copies of any inspection reports and invoices for inspections related to Unit 2070, including any improvement inspections of Unit 2070 performed by any contractor, architect, engineer, and Texas Real Estate Inspector licensed by the Texas Real Estate Commission.

**RESPONSE:** See attached.

22. Produce a copy of the LARKIN's attorney-client representation agreement related to representation of the dispute that is the subject of this lawsuit, including all bills, statements, and invoices showing services rendered, amounts charged, and all other costs and expenses.

**RESPONSE:** Objection; Plaintiff objects because the information sought is protected by attorney-client privilege and work-product. Plaintiff has produced a privilege log.

23. For the period of August 28, 2008 to the present, produce a copy of any invoices or billing statements that LARKIN and/or WHITNEY LARKIN received that relate to any construction and/or repairs related to the Attic Space.

**RESPONSE:** None.

24. For the period of August 28, 2008 to the present, produce a copy of any document that references and/or relates in any way to any wall/partition between Unit 2070 and Unit 2071 in the Attic Space.

**RESPONSE:** None.

25. For the period of August 28, 2008 to the present, produce a copy of any document that could be used to prove the existence of and/or location of any wall/partition between Unit 2070 and Unit 2071 in the Attic Space.

**RESPONSE:** See attached.

26. Produce a copy of LARKIN's "HUD-1 Settlement Statement" related to his purchase of Unit 2070.

**RESPONSE:** See attached.

27. Produce a copy of any document identifying the person and/or entity that paid the property taxes assessed to the owner of Unit 2070 for the most recent year.

**RESPONSE:** None.

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 4/21/2015
**Stan Stanart, County Clerk**
Harris County, Texas



_____Deputy

Donna M. Hernandez

28. Produce a copy of any curriculum vitae and/or resume for any attorney that may testify as an expert witness to prove any reasonable and necessary attorney's fees incurred by LARKIN.

RESPONSE: See attached.

29. Please produce any settlement agreements, guarantees, releases, covenants not to sue, compromise settlement agreements, loan receipt agreements, Mary Carter agreements, or the like, however named or described, regarding any liability or potential liability of any person or entity related to this suit or any other person or entity as a result, directly or indirectly, of the incident in question.

RESPONSE: None.

30. Please produce all reports, notes, conclusions, opinions, telephone memoranda, or the like, preliminary or otherwise, of any consulting expert witness, on whose opinions, acts or conclusions a testifying expert might rely, in whole or in part, with regard to the incident in question or with regard to the acts or omissions of Plaintiff and Defendant, whether favorable or unfavorable.

RESPONSE: Objection; Plaintiff objects because it seeks information that is protected by the work-product privilege. Plaintiff has produced a privilege log.

31. Please produce any statement of Plaintiff and Defendant, or of any agent or former agent of Plaintiff and Defendant, however recorded or transcribed relating to matters associated with the project.

RESPONSE: None.

32. Pursuant to TEX. R. EVID. 609, please produce any criminal convictions of any employee, servant, representative or agent or former agent of Plaintiff, or of any witness in this case, that you intend to use for impeachment purposes at trial.

RESPONSE: None.

33. All photographs, movies, or videotapes made of any party or witness in this case for or in anticipation of their testimony at deposition or trial.

RESPONSE: None.

34. Please produce all photographs, videotapes, films, reports, charts, models, diagrams, blueprints or drawings in your possession which are relevant to the facts of this lawsuit.

RESPONSE: See responses to Request No. 21, 25, and 30.

35. Please produce all documents which would support or prove each type and category of damages, financial losses, or expenses for which you are seeking recovery.

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 4/21/2015
**Stan Stanart, County Clerk**
Harris County, Texas



_____ Deputy

**RESPONSE:** None.

36.  Please produce all demonstrative aides, illustrative materials, posters, diagrams, or models which you retain in your actual possession, constructive possession, or to which you have a superior right of possession, which are related in any way to your allegations or defenses of the incident in question.

**RESPONSE:** See Response No. 30.

37.  Please produce all photographs, video or digital images or video recordings and audio recordings or transcriptions of any kind in your actual possession, constructive possession, or to which you have a superior right of possession, which are related in any way to your allegations or defenses or the incident in question, including, but not limited to, any photographs, video or digital images or video or audio recordings of the Attic Space and/or real property in question.

**RESPONSE:** None.

38.  Please produce any models, schematics, diagrams, displays, videotapes or photographs, which in any way refer to or relate to the incident in question, the damages claimed in this case, or any other material fact in dispute in this case.

**RESPONSE:** See Response No. 26.

39.  Please produce all calendars, diaries, notes, memoranda and all other documentation regarding the events made the basis of this lawsuit. This Request expressly does not include, and is not, a request for any attorney-client communications.

**RESPONSE:** None.

40.  Please produce all test results, data, compilations, conclusions, opinions, telephone memoranda, notes, reports, correspondence or other writings of any kind, preliminary or otherwise, from all expert witnesses you expect to call to testify in this lawsuit.

**RESPONSE:** None.

41.  Please produce all test results, data, compilations, conclusions, opinions, telephone memoranda, notes, reports, correspondence or other writings of any kind, preliminary or otherwise, of any consulting expert witness which have been furnished to or reviewed by any expert witness you expect to call to testify in this lawsuit.

**RESPONSE:** Objection; Plaintiff objects because it is protected under the work product privilege. Plaintiff has produced a privilege log.

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 4/21/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Donna M. Hernandez



42. Please produce all recordings of conversations with Plaintiff, or any agents or employees of Plaintiff, and all transcriptions, notes, memoranda, or other documentation regarding said conversations.

**RESPONSE:** None.

43. Please produce all recordings of any expert witness or recordings furnished to any expert witness you expect to call to testify in this lawsuit, and all transcriptions, notes, memoranda, or other documentation regarding said recordings.

**RESPONSE:** None.

44. Please produce all written or recorded statements from any person that are related to this lawsuit.

**RESPONSE:** All responsive documents have been produced.

45. Please produce a copy of each and every journal, standard, guideline, book, treatise, article or other piece of literature upon which you intend to rely in the prosecution of your claims against Plaintiff, and/or which you intend to offer into evidence, and/or upon which you intend to examine any expert witness.

**RESPONSE:** None.

46. Please produce any and all documents reflecting or purporting to reflect the cause of your alleged losses.

**RESPONSE:** None.

47. Please produce all documents, of any kind or character, which in any way relate to or support the allegations contained in your pleadings, to the extent that those documents have not already been requested by another specific request for production, and which you intend to use at trial.

**RESPONSE:** None.

48. Please produce a copy of the curriculum vitae of all experts you will call to testify at the time of trial, including the curriculum vitae of any consulting expert whose opinions in part form the basis of the opinions of the testifying experts.

**RESPONSE:** See response to Request No. 28.

49. Please produce all documents and tangible things containing, evidencing or relating in any way to any communications between you and any other Defendant or Third Party Defendant regarding the claims you have made.

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 4/21/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____Deputy



**RESPONSE:** All responsive documents have been produced. See Responses No. 6, 7, 9, 10, 11, and 16.

50. Please produce all documents and tangible things concerning any investigation of the property/project damage in question, regardless of who performed such investigation.

**RESPONSE:** Objection; Plaintiff objects because this request it is protected under work-product privilege. Plaintiff has produced a privilege log.

51. A copy of all documents exchanged between you and Plaintiff.

**RESPONSE:** None.

52. Documents showing attorney fees paid or owing.

**RESPONSE:** Objection; Plaintiff objects because this request seeks information protected under work-product privilege. Plaintiff has produced a privilege log.

53. Pursuant to TEX. R. EVID. 609, please produce any documents related to WHITNEY LARKIN's criminal convictions.

**RESPONSE:** None.

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 4/21/2015
**Stan Stanart, County Clerk**
Harris County, Texas



_____Deputy



# Response to Request No. 2

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 4/21/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy

Donna M. Hernandez



Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 4/21/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Donna M. Hernandez





Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 4/21/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Donna M. Hernandez

# Response to Request Nos. 6, 7, 10, 11

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 4/21/2015
**Stan Stanart, County Clerk**
Harris County, Texas



_____Deputy

Donna M. Hernandez

 **BLONDE ROAST**

*Available where you buy groceries.* Learn More

wcl86   Sign Out

Check Mail  |  Compose

Search the Web     Search | enhanced by       Shortcuts | Settings | Help

Search

| Reply |  | Reply All |  | Forward |   | Actions          ‡ |  | Go |  | Delete |

Mail

- Today on AOL
- New Mail (34)
- Old Mail
- Drafts
- Sent
- Spam (12)
- Recently Deleted
- Saved Chats
- Contacts
- Calendar
- My Folders     Manage Folders

### Riverwalk Unit 2070: Renovation in 2071 causing Security Breach in 2070

From: wcl86 <wcl86@aol.com>
To: 2300riverwalk <2300riverwalk@gmail.com>; s.lafleur <s.lafleur@pmghouston.com>
Date: Sun, Mar 16, 2014 10:15 pm
photo_1.JPG  photo_2.JPG

Stephanie and the Riverwalk Board:

I have discovered that the new owner of Unit 2071 is building out the crawl space above our units. There are two major issues with this build out/renovation.

First, the contractors have taken down the wall between our units leaving my unit exposed to contractors and other individuals who come into her home. Attached are pictures from when I open the door to my unit and am able to see straight into her unit and likewise, there is access into my unit. I do have a lock on the door where you access the crawl space and an alarm system, but when I am home, the protection is minimal as I do not have a sensor on that door. This security concern leaves me very vulnerable and exposed. At this moment and this late hour, she has contractors in her unit, working.

Second, we have an issue over crawl space. It seems as though she has a 4 feet encroachment into my unit through my crawl space. I discovered the issue when I heard someone walking above my bedroom closet. I went and opened the door to my storage unit and discovered that part of my crawl space had been taken. According to measurements between the contractor and I, it appears as if she has taken approximately 3-4 feet of my crawl space and that is how her closet is being built above my closet. I only have 11 feet of crawl/storage space currently. The fire wall has always been on my side of the unit, but I had approximately 3-4 feet beyond the fire wall. From my understanding, this space is not hers.

I have asked her to stop construction on this area. I am also unsure if she received approval for this extensive build-out, as I know that is required.

Please advise on this matter. Thank you in advance for your prompt attention to this matter.

Whitney Larkin
713-885-2511

2 Attached Images



Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 4/21/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy

Donna M. Hernandez





| Reply | | Reply All | | Forward | | Actions ⬧ | | Go | | Delete |

Standard Version | Terms of Service | Privacy Policy | About Our Ads | Shortcuts    © 2014 AOL Inc. All Rights Reserved

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 4/21/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy

Donna M. Hernandez





| Reply | | Reply All | | Forward | | Actions ⋮ | | Go | | Delete |

Standard Version | Terms of Service | Privacy Policy | About Our Ads | Shortcuts  © 2014 AOL Inc. All Rights Reserved

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 4/21/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy

Donna M. Hernandez



wcl86   Sign Out

: Check Mail | : Compose      Search the Web      i Search | enhanced by      Shortcuts | Settings | Help

Search      | Reply | | Reply All | | Forward | | Actions    : | | Go | | Delete |

| Mail    : Q

Today on AOL

New Mail (35)

Old Mail

Drafts

Sent

Spam (12)

Recently Deleted

Saved Chats

Contacts

Calendar

My Folders   Manage Folders

**Update on Unit 2071**

From: Whitney Larkin <WCL86@aol.com>
   To: 2300riverwalk <2300riverwalk@gmail.com>; Stephanie LaFleur <s.lafleur@pmghouston.com>
   Cc: helrx <helrx@aol con>
Date: Mon, Mar 24, 2014 6:43 pm

Stephanie and Riverwalk board:

I did not receive a response from you all. I checked the crawl space and see
that a wall has been erected at the 11 foot mark. My last correspondence with
the board was that a cease and desist letter had been given to the owner of unit
2071, and that I would be updated, but I did not and have not received any
updates. However, now I hear that construction is being done in the unit. Did
the board allow the tenant to complete the construction? If so, I was not made
aware of the decision as requested in writing and it still encroaches on the
space. Please respond.

Whitney Larkin

| Reply | | Reply All | | Forward | | Actions    : | | Go | | Delete |

Standard Version   Terms of Service | Privacy Policy   About Our Ads : Shortcuts   ©2014 AOL Inc. All Rights Reserved

---

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 4/21/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy

Donna M. Hernandez



AOL | Mail Toolbar | Make AOL My Home Page

wcl86   Sign Out

| Check Mail | Compose                          Search the Web                          Search ¦ enhanced by                    Shortcuts | Settings | Help

Search                    | Reply || Reply All || Forward | | Actions _____ ÷ | | Go | | Delete |

¦ Mail                ∷ Q

Today on AOL

New Mail (35)           **RE: Update on Unit 2071**

Old Mail                From: wcl86 <wcl86@aol com>
                          To: s.lafleur <s.lafleur@pmghouston.com>; 2300riverwalk <2300riverwalk@gmail.com>
Drafts                    Cc: healthntepharm <healthntepharm@aol.com>
                        Date: Thu, Mar 27, 2014 1:18 pm
Sent                        Power_of_Attny_signed_&_notarized.pdf

Spam (12)               Attached is the requested information.  I look forward to discussing
                        and resolving this matter soon.
Recently Deleted

Saved Chats             Whitney

                        -----Original Message-----
Contacts                From: Stephanie LaFleur <s.lafleur@pmghouston.com>
                        To: 'Whitney Larkin' <WCL86@aol.com>; 2300riverwalk
Calendar                <2300riverwalk@gmail.com>
                        Cc: helrx <helrx@aol.com>
My Folders   Manage Folders   Sent: Wed, Mar 26, 2014 10:14 pm
                        Subject: RE: Update on Unit 2071

                        ¦ Ms. Larkin,
                        As the tenant of the unit I am not at liberty to discuss the ongoing
                        issues with you without written power of attorney from the owner of the
                        unit.  Please forward the necessary documentation to our office which
                        will give management permission to speak with you regarding this issue.
                          I do understand that the owner if your father however because of the
                        legal ramifications of this issue I must have written documentation to
                        speak with you. Not to seam as though I am ignoring your concerns, I
                        will however state that the Association has requested further
                        information and clarification of the question of ownership to the attic
                        crawl space. Thanks in advance for your patience and I look forward to
                        hearing from you soon, so that we can rectify the problem and resolve
                        the issue of concern.



                        Best Regards,
                        Stephanie Lafleur
                        Community Manager

                        Principal Management Group of Houston, AAMC www.pmghouston.com

                        www.associaadvantage.com
                        Providing exceptional discounts on household goods and services to
                        millions of homeowners nationwide

                        11000 Corporate Centre Drive, Suite 150 Houston, TX 77041
                        Main: (713) 329-7100
                        Direct: (713) 329-7158
                        Fax: (713) 329-7198

                        Associa- The Leader in Community Association Management

                        Notice: This e-mail message is for the sole use of the intended
                        recipient(s) and may contain confidential and privileged information.
                        Any unauthorized review, use, disclosure or distribution is prohibited.
                        If you are not the intended recipient, please contact the sender by
                        reply e-mail and destroy all copies of the original message. Please
                        virus check all attachments to prevent widespread contamination and
                        corruption of files and operating systems. The unauthorized access,
                        use, disclosure, or distribution of this email may constitute a
                        violation of the Federal Electronic Communications Privacy Act of 1986
                        and similar state laws. This communication does not reflect an
                        intention by the sender or the sender's client or principal to conduct
                        a transaction or make any agreement by electronic means. Nothing
                        contained in this message or in any attachment shall satisfy the
                        requirements for a writing, and nothing contained herein shall
                        constitute a contract or electronic signature under the Electronic
                        Signatures in Global and National Commerce Act, any version of the
                        Uniform Electronic Transactions Act or any other statute governing
                        electronic transactions.



                        -----Original Message-----
                        From: Whitney Larkin [mailto:WCL86@aol.com]
                        Sent: Monday, March 24, 2014 6:44 PM
                        To: 2300riverwalk@gmail.com; Stephanie LaFleur

---

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 4/21/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy

Donna M. Hernandez



Cc: helrx@aol.con
Subject: Update on Unit 2071

Stephanie and RIverwalk board:

I did not receive a response from you all. I checked the crawl space
and see that a wall has been erected at the 11 foot mark. My last
correspondence with the board was that a cease and desist letter had
been given to the owner of unit 2071, and that I would be updated, but
I did not and have not received any updates. However, now I hear that
construction is being done in the unit. Did the board allow the tenant
to complete the construction? If so, I was not made aware of the
decision as requested in writing and it still encroaches on the space.
Please respond.

Whitney Larkin

| Reply | | Reply All | | Forward | | Actions                    : | | Go | | Delete |

Standard Version | Terms of Service | Privacy Policy | About Our Ads | Shortcuts    © 2014 AOL Inc. All Rights Reserved

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 4/21/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy

Donna M. Hernandez



## LIMITED POWER OF ATTORNEY

I, Hugh Larkin, of Katy, Texas, appoint, Whitney Larkin, of Houston, Texas, as my attorney-in-fact to act on behalf for the purpose of real property at the address of 2300 Old Spanish Trail, Unit 2070, Houston, Texas 77054:

> Acting on behalf and in all capacity for all matters (including but not limited to voting, dealing with all affairs pertaining to the condominium, etc.) for the above-referenced property

This power of attorney starts to be effective on September 1, 2013, and shall continue until I formally revoke it in writing.

I grant my attorney-in fact full authority to act in any reasonable and necessary manner for the purpose of exercising the above powers. I ratify all lawfully performed acts by my attorney-in-fact in exercising those powers.

I agree that any third party who is given a copy of this power of attorney may act relying on it. I agree that revocation of this power of attorney is effective to as a third party only upon receipt of actual notice by the third party. If because of reliance on this power of attorney, a third party suffers any loss, I agree to indemnify the third party for the loss.

Signed this 27th day of August, 2013.

_____
Hugh Larkin

County of Harris

State of Texas

SWORN AND SUBSCRIBED TO before me on this day of August 28, 2013.

_____

MICHAEL BERNARD WILSON, II
Notary Public, State of Texas
My Commission Expires
December 09, 2015

NOTARY PUBLIC IN AND FOR
THE STATE OF TEXAS

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 4/21/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy

Donna M. Hernandez



AOL | Mail Toolbar | Make AOL My Home Page

wcl86   Sign Out

| Check Mail | | Compose |       Search the Web [_____] | Search | enhanced by      Shortcuts | Settings | Help

| Search _____ |    | Reply | | Reply All | | Forward | | Actions _____ ÷ | | Go | | Delete |

| Mail _____ ÷ | Q

- Today on AOL
- New Mail (35)
- Old Mail
- Drafts
- Sent
- Spam (12)
- Recently Deleted
- Saved Chats

- Contacts
- Calendar

- My Folders   Manage Folders

## Riverwalk Condominium: Update for 2070

From: wcl86 <wcl86@aol com>
   To: s.lafleur <s.lafleur@pmghouston.com>; 2300riverwalk <2300riverwalk@gmail.com>
Bcc: healthntepharm <healthnritepharm@aol.com>
Date: Fri, Apr 11, 2014 8:52 am

Morning Stephanie:

Please inform me of the status of the decisions re Unit 2070 (a. Construction project in 2071 affecting 2070, and b. plumbing issue). Also, please send me a copy of the cease and desist letter/email/correspondence sent to Unit 2071.

I am also requesting the official mailing addresses where certified mail can be sent for the management company and the Riverwalk board.

Also, what are the board meeting dates for April and May 2014? Consider this email my formal request to be placed on the agenda at both the April 2014 Board Meeting and May 2014 Board Meeting. Should another form of request be made, please inform me prior to the meeting.

Thank you.

Whitney Larkin
Unit 2070
713-885-2511

| Reply | | Reply All | | Forward | | Actions _____ ÷ | | Go | | Delete |

Standard Version | Terms of Service | Privacy Policy | About Our Ads | Shortcuts    ©2014 AOL Inc. All Rights Reserved

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 4/21/2015
## Stan Stanart, County Clerk
Harris County, Texas

_____ Deputy

Donna M. Hernandez





ONE. OF A KIND.

wcl86   Sign Out

Check Mail | Compose            Search the Web          · Search  · enhanced by          Shortcuts | Settings | Help

Search

| Reply || Reply All || Forward | | Actions        ÷ || Go || Delete |

Mail          ÷ Q

Today on AOL

New Mail (35)

Old Mail

Drafts

Sent

**Spam (12)**

Recently Deleted

Saved Chats

Contacts

Calendar

My Folders    Manage Folders

### RE: Riverwalk Condominium: Update for 2070

From: wcl86 <wcl86@aol com>
  To: s lafleur <s.lafleur@pmghouston com>; 2300riverwalk <2300riverwalk@gmail.com>
  Bcc: healthritepharm <healthritepharm@aol com>
Date: Mon, Apr 14, 2014 9:23 am

Stephanie:

The construction issue regarding encroachment as stated in my previous
emails still exists.  The space that the new owner has enclosed is not
proportionate to the amount that she is entitled.  According to your
email, it sounds as if you informed the new owner that she could
enclose the space as long as it is proportionate, however, she took 3-4
feet of my crawl space; therefore, leaving me with less attic space;
currently, I only have 10-11 feet of crawl space.

In my previous email dated 3/21/14, I attached the official survey
filed with the
Harris County property records showing the amount of space that she was
entitled to take should the board approve her project.  A real estate
listing is not legally binding; property records filed with the County
are binding.  I also requested a written decision from the board and/or
management regarding the encroachment issue, to which I never received
a response.  Therefore, it sounds like a decision was made, but I was
never even contacted or made aware of the decision and the new owner
has enclosed too large of an area.   Therefore, the wall needs to be
moved back 3-4 feet.  I was never contacted by management or the board
regarding this matter, and I have complied with all requests and
patiently awaited a response.  Moreover, since the wall has been
erected in the wrong spot, the wall now needs to be moved.

I look forward to receiving a written response from the board and/or
management regarding the disproportionate taking of the attic space and
the solution and timeframe of moving the wall.

Thank you.

Whitney Larkin
713-885-2511
Unit 2070

-----Original Message-----
From: Stephanie LaFleur <s.lafleur@pmghouston.com>
To: 'wcl86@aol.com' <wcl86@aol.com>; 2300riverwalk
<2300riverwalk@gmail.com>
Sent: Sat, Apr 12, 2014 7:05 am
Subject: RE: Riverwalk Condominium: Update for 2070

Ms. Larkin,
The letter was sent to the owner in question, requesting that they stop
the construction until the plans and drawings as well as any photos of
the project could be reviewed.  The owner did comply and we were even
able to speak directly with the contractor that is or was making the
modifications.  The area in question was already closed in by the
previous owner and it appears that the only thing that the new owner
was doing was modifying the space by code standards. I even looked at
the space on the real estate listing and it was clearly already closed
in to be some sort of closet space.  The space in question is a shared
space and each owner has a proportionate share of that space to use as
they see fit within building guidelines of course. So I'm not quite
sure what the issue is now that the space has been closed off from the
other side.  P[lease advise???
Also I can not provide you with a copy of the Cease and Desist letter
that was sent as it pertains to another owners unit, this is not our
policy to do so.  Sorry. We do not sent copies of DR violation letter
to other others if they DO NOT and was Not mailed to them about their
own unit.
Certified mail can be sent to :
11000 CORPORATE CENTRE DRI #150
Houston, TX. 77041

The meetings are always a the 4th Tuesday o the month. and I will place
you on the Agenda.  What will be your topic that you would like the
board to address?


Best Regards,
Stephanie Lafleur
Community Manager

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 4/21/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy

Donna M. Hernandez



Principal Management Group of Houston, AAMC www.pmghouston.com

www.associaadvantage.com
Providing exceptional discounts on household goods and services to
millions of homeowners nationwide

11000 Corporate Centre Drive, Suite 150 Houston, TX 77041
Main: (713) 329-7100
Direct: (713) 329-7158
Fax: (713) 329-7198

Associa- The Leader in Community Association Management

Notice: This e-mail message is for the sole use of the intended
recipient(s) and may contain confidential and privileged information.
Any unauthorized review, use, disclosure or distribution is prohibited.
If you are not the intended recipient, please contact the sender by
reply e-mail and destroy all copies of the original message. Please
virus check all attachments to prevent widespread contamination and
corruption of files and operating systems. The unauthorized access,
use, disclosure, or distribution of this email may constitute a
violation of the Federal Electronic Communications Privacy Act of 1986
and similar state laws. This communication does not reflect an
intention by the sender or the sender's client or principal to conduct
a transaction or make any agreement by electronic means. Nothing
contained in this message or in any attachment shall satisfy the
requirements for a writing, and nothing contained herein shall
constitute a contract or electronic signature under the Electronic
Signatures in Global and National Commerce Act, any version of the
Uniform Electronic Transactions Act or any other statute governing
electronic transactions.


-----Original Message-----
From: wcl86@aol.com [mailto:wcl86@aol.com]
Sent: Friday, April 11, 2014 8:52 AM
To: Stephanie LaFleur; 2300riverwalk@gmail.com
Subject: Riverwalk Condominium: Update for 2070

Morning Stephanie:

Please inform me of the status of the decisions re Unit 2070 (a.
Construction project in 2071 affecting 2070, and b. plumbing issue).
Also, please send me a copy of the cease and desist
letter/email/correspondence sent to Unit 2071.

I am also requesting the official mailing addresses where certified
mail can be sent for the management company and the Riverwalk board.

Also, what are the board meeting dates for April and May 2014?
Consider this email my formal request to be placed on the agenda at
both the April 2014 Board Meeting and May 2014 Board Meeting.  Should
another form of request be made, please inform me prior to the meeting.

Thank you.

Whitney Larkin
Unit 2070
713-885-2511

| Reply | | Reply All | | Forward | | Actions          : | | Go | | Delete |

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 4/21/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy

Donna M. Hernandez







wcl86    Sign Out

| Check Mail | Compose ·      Search the Web          , Search   enhanced by       Shortcuts | Settings | Help

Search

Mail      :   Q

| Reply | | Reply All | | Forward | | Actions      | Go | | Delete |

Today on AOL

New Mail (35)

Old Mail

Drafts

Sent

Spam (12)

Recently Deleted

Saved Chats

Contacts

Calendar

My Folders    Manage Folders

### RE: Riverwalk Unit 2070: Renovation in 2071 causing Security Breach in 2070

From: wcl86 <wcl86@aol.com>
   To: s.lafleur <s.lafleur@pmghouston.com>; 2300riverwalk <2300riverwalk@gmail.com>
Date: Mon, Mar 17, 2014 5.24 pm

Stephanie:

Thank you for your prompt attention to this matter. I do have a
question. Have you seen a copy of this alleged survey that purportedly
shows the crawl space dimensions according to the new owner? If so,
please provide me a copy. Thank you in advance.

Whitney Larkin

-----Original Message-----
From: Stephanie LaFleur <s.lafleur@pmghouston.com>
To: 'wcl86@aol.com' <wcl86@aol.com>; 2300riverwalk
<2300riverwalk@gmail.com>
Sent: Mon, Mar 17, 2014 3:11 pm
Subject: RE: Riverwalk Unit 2070: Renovation in 2071 causing Security
Breach in 2070

Ms. Larkin,
I received an email from the new owner and this issue is under
investigation because the crawl space was included on her survey when
she bought the unit. I have requested that they CEASE AND DESIST the
construction that is taking place within the unit until this can be
resolved. Please let me know if you have any questions and or comments
regarding this information.


Best Regards,
Stephanie LaFleur
Community Manager

Principal Management Group of Houston, AAMC www.pmghouston.com

www.associaadvantage.com
Providing exceptional discounts on household goods and services to
millions of homeowners nationwide

11000 Corporate Centre Drive, Suite 150 Houston, TX 77041
Main: (713) 329-7100
Direct: (713) 329-7158
Fax: (713) 329-7198

Associa- The Leader in Community Association Management

Notice: This e-mail message is for the sole use of the intended
recipient(s) and may contain confidential and privileged information.
Any unauthorized review, use, disclosure or distribution is prohibited.
If you are not the intended recipient, please contact the sender by
reply e-mail and destroy all copies of the original message. Please
virus check all attachments to prevent widespread contamination and
corruption of files and operating systems. The unauthorized access,
use, disclosure, or distribution of this email may constitute a
violation of the Federal Electronic Communications Privacy Act of 1986
and similar state laws. This communication does not reflect an
intention by the sender or the sender's client or principal to conduct
a transaction or make any agreement by electronic means. Nothing
contained in this message or in any attachment shall satisfy the
requirements for a writing, and nothing contained herein shall
constitute a contract or electronic signature under the Electronic
Signatures in Global and National Commerce Act, any version of the
Uniform Electronic Transactions Act or any other statute governing
electronic transactions.



-----Original Message-----
From: wcl86@aol.com [mailto:wcl86@aol.com]
Sent: Sunday, March 16, 2014 10:15 PM
To: 2300riverwalk@gmail.com; Stephanie LaFleur
Subject: Riverwalk Unit 2070: Renovation in 2071 causing Security
Breach in 2070

Stephanie and the Riverwalk Board:

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 4/21/2015
**Stan Stanart, County Clerk**
Harris County, Texas



_____Deputy

Donna M. Hernandez



I have discovered that the new owner of Unit 2071 is building out the crawl space above our units. There are two major issues with this build out/renovation.

First, the contractors have taken down the wall between our units leaving my unit exposed to contractors and other individuals who come into her home. Attached are pictures from when I open the door to my unit and am able to see straight into her unit and likewise, there is access into my unit. I do have a lock on the door where you access the crawl space and an alarm system, but when I am home, the protection is minimal as I do not have a sensor on that door. This security concern leaves me very vulnerable and exposed. At this moment and this late hour, she has contractors in her unit, working.

Second, we have an issue over crawl space. It seems as though she has a 4 feet encroachment into my unit through my crawl space. I discovered the issue when I heard someone walking above my bedroom closet. I went and opened the door to my storage unit and discovered that part of my crawl space had been taken. According to measurements between the contractor and I, it appears as if she has taken approximately 3-4 feet of my crawl space and that is how her closet is being built above my closet. I only have 11 feet of crawl/storage space currently. The fire wall has always been on my side of the unit, but I had approximately 3-4 feet beyond the fire wall. From my understanding, this space is not hers.

I have asked her to stop construction on this area. I am also unsure if she received approval for this extensive build-out, as I know that is required.

Please advise on this matter. Thank you in advance for your prompt attention to this matter.

Whitney Larkin
713-885-2511

| Reply | | Reply All | | Forward | | Actions          ÷ | | Go | | Delete |

Standard Version | Terms of Service | Privacy Policy | About Our Ads | Shortcuts    © 2014 AOL Inc. All Rights Reserved

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 4/21/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy

Donna M. Hernandez



wcl86   Sign Out

Check Mail  |  Compose

Search the Web            Search  enhanced by                    Shortcuts | Settings | Help

Search

[ Reply ] [ Reply All ] [ Forward ] [ Actions           ÷ ] [ Go ] [ Delete ]

Mail

Today on AOL

New Mail (35)

Old Mail

Drafts

Sent

Spam (12)

Recently Deleted

Saved Chats

Contacts

Calendar

My Folders     Manage Folders

### Riverwalk Unit 2070: Request for Update on Renovation in 2071 causing Security Breach & Encroachment in 2070

From: wcl86 <wcl86@aol.com>
To: 2300riverwalk <2300riverwalk@gmail com>; s lafleur <s.lafleur@pmghouston.com>
Cc: helrx <helrx@aol com>
Date: Fri, Mar 21, 2014 10 40 am
Main_Flr_Survey_1.JPG Main_Flr_Survey_2.JPG Loft_Survey.JPG Loft_Survey_2.JPG Security_1.JPG

To the Riverwalk Board and Management Company:

This is Whitney Larkin from Unit 2070.  I am writing again in reference to the construction effort from the person in Unit 2071.

First, I am concerned for my safety.  The partition between the two units has been removed, therefore providing access to unknown persons and contractors to my unit.  Please see Security 1, attached picture of how the crawl space door is being secured.  In my previous email dated 3/16, I attached pictures showing the crawl space exposure.  The continual exposure of my unit to different individuals and/or contractors is a high priority issue and different legal ramifications are triggered.

Additionally, my survey is showing that I own the space that the person in Unit 2071 is encroaching upon.  Please see attached surveys, as well as reference the Condominium Declaration filed and recorded with Harris County Property Records.  Therefore, her 3-4 feet encroachment is still an issue that needs to be resolved.

I have copied my father, Hugh Larkin, the legal owner of the unit, on this email as he is aware of everything that is occurring in this process.  I would sincerely appreciate your prompt written response regarding these matters.

I am very concerned, not only for my security but also the encroachment onto my property; therefore, I request a written response.

Thanking you in advance.

Sincerely,

Whitney Larkin
Unit 2070
713-885-2511

| 5 Attached Images



---

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 4/21/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____Deputy

Donna M. Hernandez





Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 4/21/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy

Donna M. Hernandez





LOFT AREA

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 4/21/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy

Donna M. Hernandez



LOFT AREA

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 4/21/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy

Donna M. Hernandez



# Response to Number 17

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 4/21/2015
**Stan Stanart, County Clerk**
Harris County, Texas



_____Deputy

Donna M. Hernandez

## LIMITED POWER OF ATTORNEY

I, Hugh Larkin, of Katy, Texas, appoint, Whitney Larkin, of Houston, Texas, as my attorney-in-fact to act on behalf for the purpose of real property at the address of 2300 Old Spanish Trail, Unit 2070, Houston, Texas 77054:

> Acting on behalf and in all capacity for all matters (including but not limited to voting, dealing with all affairs pertaining to the condominium, etc.) for the above-referenced property

This power of attorney starts to be effective on September 1, 2013, and shall continue until I formally revoke it in writing.

I grant my attorney-in fact full authority to act in any reasonable and necessary manner for the purpose of exercising the above powers. I ratify all lawfully performed acts by my attorney-in-fact in exercising those powers.

I agree that any third party who is given a copy of this power of attorney may act relying on it. I agree that revocation of this power of attorney is effective to as a third party only upon receipt of actual notice by the third party. If because of reliance on this power of attorney, a third party suffers any loss, I agree to indemnify the third party for the loss.

Signed this 27th day of August, 2013.

_____
Hugh Larkin

County of Harris

State of Texas

SWORN AND SUBSCRIBED TO before me on this day of August 28, 2013.

```
MICHAEL BERNARD WILSON, II
Notary Public, State of Texas
My Commission Expires
December 09, 2015
```

NOTARY PUBLIC IN AND FOR
THE STATE OF TEXAS

---

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 4/21/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy

Donna M. Hernandez



# Response to Request No. 19

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 4/21/2015
**Stan Stanart, County Clerk**
Harris County, Texas



_____Deputy

Donna M. Hernandez

**Townhouse/Condo**   ML #: 8225710   Status: A   LP: $104,000

County: **HARRIS**   Tax Acc #: 115-828-012-0014-001   SP/SF: $0.00   LP/SF: $127.61

Area: **17 - Southwest**   Location: 41 - Houston   Sec #: 2   KM: 533J

Addr: **2300 OLD SPANISH TRL**   Unit# 2070   City: **HOUSTON**   Zip: 77054-2143

Sub: **RIVERWALK CONDO PH 1 2 & 3**   State: Texas   Country: United States

Listing Firm: Prudential Gary Greene,   Also For Lease: N

Mkt Area: **Medical Center**   Legal: UNIT 2070 BLDG L .334955 INT COMMON LAND & ELE RIVER WALK CO

SqFt: **815/Appraisal District**   Lot Size: 0/Appraisal District   Year Built: 1983/Appraisal District

SchDist: 27 - Houston   Elem: Whidby   Middle: Cullen   High: Lamar

SCHOOL INFO IS SUBJECT TO CHANGE. BUYERS SHOULD INDEPENDENTLY VERIFY.

### Description and Room Dimensions

Type Condo: **Yes**    Loft: **Yes**    New Construction: **No/**    Builder Name:

# Bldg Stry: **3**    # Unit Story: **2**    Style: **Traditional**

FrntDoorFaces: **East**    Efficiency:    ApproxComplete:    UntLvl: **Levels 2 and 3**

Living: **14x19**    Dining: **9x8**    1st Bed: **12x14**   ExtraRm: **15x7**    # Bedrooms: **1 / 2**

Den:    Kitchn: **8x6**    2nd Bed:   Utility Rm:    #FB/HB: **1/0**

Game Rm:    Brkfst:    3rd Bed:   Access: **Manned Gate**

Study:    4th Bed:   Garage: **0/**

LotSize: **0/Appraisal District**    LotDim:    5th Bed:   Show: **Appointment Required, Supra Keybox**

Carport: **/**    Parking: **Unassigned Parking**

Dir: **BETWEEN ALMEDA CAMBRIDGE OFF OF OLD SPANISH TRAIL ON SOUTH SIDE. Guard entrance on south across from the VA hospital**

Physical Property Description - Public: **Fantastic location for medical center students/employees. This small cozy condo is well situated in the lush Riverwalk development with a lovely view of the pond from your living room. Vaulted ceilings, wood burning fireplace, open kitchen, recent AC system are just some of it's features. The loft can serve as bedroom or study. Have coffee out on your balcony and hear the gentle rush of water from the fountain. Pools/24hour manned gate/exercise room/sauna**

### Interior, Exterior, Utilities and Additional Information

Microwave: **Yes**    Dishwasher: **Yes**    Cmpctr:   Dispsl: **Yes**    Oven: **Electric Oven**    Range: **Electric Range**

Appl: **Dryer Included, Refrigerator, Washer Included**    SepIceMkr:    Wash/Dry Conn **Yes**    Lnd Loc: **Utility Rm in House**

Interior: **Alarm System - Owned, Drapes/Curtains/Window Cover, Fire/Smoke Alarm, High Ceiling, Refrigerator Included**    Flooring: **Carpet**    Countertops: **LAMINATE**

Bedrooms: **Split Plan**    Master Bath: **Tub with Shower, Whirlpool/Tub**    Energy:

Rooms: **Living/Dining Combo**    Fireplace: **1/Wood Burning Fireplace**

Prvt Pool: **No/**    AreaPool: **Yes**    Roof: **Composition**

Unit Loc:    Exter Constr: **Brick/Veneer**    Foundation: **Slab**

Extr: **Balcony**    St Surf. **Concrete, Curbs**

Waterfront Amenities.

Heat: **Central Electric**    Cool: **Central Electric**    Wtr/Swr **Public Sewer, Public Water**

Utility Dist: **No**    Images: **14**    Addr on Web: **Yes**

Management: **Yes**    Management Name: **RANDALL MANAGEMENT**    Mgt Phone: **(713)728-1126**

Defects: **No Known Defects**    Disclosures: **Sellers Disclosure**

Exclusions: **NONE**    Maint Fee: **Yes/$252**   OPEnd Date:

Maintenance Includes **Cable TV, Exterior Building, Grounds, Insurance Common Area, Recreational Facilities, Water and Sewer**

Tax w/o Exempt/Yr: **$2591/2007**   Tax Rate: **2.64371**

Fri, Jul 18, 2008 02:28 PM

*Data Not Verified/Guaranteed by MLS*
*Obtain signed HAR Broker Notice to Buyer Form*

Prepared by: Marichu Salvacion

*Upstairs loft need painting but ok*
*Appliances could use updating*
*Carpet living area - loft*
*updated water heater/ac*
*- no real closet space*

---

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 4/21/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy

Donna M. Hernandez



# Response to Request No. 21

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 4/21/2015
**Stan Stanart, County Clerk**
Harris County, Texas



_____ Deputy
Donna M. Hernandez

## Inspection Services By Stephen Ruback
### 17515 Spring-Cypress, #C 136, Cypress, TX 77429
### 832-489-1071
# PROPERTY INSPECTION REPORT

| | |
|---|---|
| **Prepared For:** | Hugh Larkin |
| | (Name of Client) |
| **Concerning:** | 2300 Old Spanish Trail, Unit 2070, Houston, TX 77054 |
| | (Address or Other Identification of Inspected Property) |
| **By:** | Stephen Ruback, License Number 6030        08/01/08 |
| | (Name and License Number of Inspector)        (Date) |
| | n/a |
| | (Name, License Number and Signature of Sponsoring Inspector, if required) |

The inspection of the property listed above must be performed in compliance with the rules of the Texas Real Estate Commission (TREC).

The inspection is of conditions which are present and visible at the time of the inspection, and all of the equipment is operated in normal modes. The inspector must indicate which items are in need of repair or are not functioning and will report on all applicable items required by TREC rules.

This report is intended to provide you with information concerning the condition of the property at the time of inspection. Please read the report carefully. If any item is unclear, you should request the inspector to provide clarification.

It is recommended that you obtain as much history as is available concerning this property. This historical information may include copies of any seller's disclosures, previous inspection or engineering reports, reports performed for or by relocation companies, municipal inspection departments, lenders, insurers, and appraisers. You should attempt to determine whether repairs, renovation, remodeling, additions or other such activities have taken place at this property.

Property conditions change with time and use. Since this report is provided for the specific benefit of the client(s), secondary readers of this information should hire a licensed inspector to perform an inspection to meet their specific needs and to obtain current information concerning this property.

### ADDITIONAL INFORMATION PROVIDED BY INSPECTOR

Report # 502482

Home was an upstairs condominium unit.

Home was occupied so not all outlets, floors and walls were accessible.

All locations in and on the house will be described in reference to the front door, from the position looking at the front doorway from outside of the house.

Promulgated by the Texas Real Estate Commission(TREC) P.O. Box 12188, Austin, TX 78711-2188,1-800-250-8732 or (512) 459-6544 (http:\\www.trec.state.tx.us). REI 7A-0

Page 1 of 8

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 4/21/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy

Donna M. Harpe



Additional pages may be attached to this report. Read them very carefully. This report may not be complete without the attachments. If an item is present in the property but is not inspected, the "NI" column will be checked and an explanation is necessary. Comments may be provided by the inspector whether or not an item is deemed in need of repair.

| I=Inspected | NI=Not Inspected | | NP--Not Present   R=Not Functioning or In Need of Repair |
|---|---|---|---|
| I | NI | NP | R | Inspection Item |

☐ ☐ ✔ ☐  **I. STRUCTURAL SYSTEMS**
**A. Foundations** (if all crawl space areas are not inspected, provide an explanation.)
*Comments (An opinion on performance is mandatory.):*
Home was an upstairs condominium unit. Verify that the association takes full responsibility for this area.

☐ ☐ ✔ ☐  **B. Grading and Drainage**
*Comments:* Home was an upstairs condominium unit. Verify that the association takes full responsibility for this area.

☐ ☐ ✔ ☐  **C. Roof Covering** (If the roof is inaccessible, report the method used to inspect.)
*Comments:* Roof covering inspected by direct observation and binoculars.
Asphalt shingles appear to function as intended.
Home was an upstairs condominium unit. Verify that the association takes full responsibility for this area.

✔ ☐ ☐ ☐  **D. Roof Structure and Attic** (if the attic is inaccessible, report the method used to inspect.)
*Comments:* Insulation thickness nominally 6+ inches.
Home was an upstairs condominium unit. Verify which parts of this area that the association takes full responsibility for.

✔ ☐ ☐ ✔  **E. Walls** (interior and Exterior)
*Comments:*
*Exterior:*
Home was an upstairs condominium unit. Verify that the association takes full responsibility for this area.
*Interior:*
Several small cracks and bulges – repair.

✔ ☐ ☐ ✔  **F. Ceilings and Floors**
*Comments:* Plastic tile in bathroom floor with small bulges/depressions suggesting uneven subfloor surface.

✔ ☐ ☐ ✔  **G. Doors** (interior and Exterior)
*Comments:*
*Entry doors:*
Exterior sliding door with broken screen – repair.
Exterior sliding door screen difficult to operate – repair.
*Interior doors:*
Sliding glass closet door broken glass – repair.
Sliding glass closet door with glass apparently not safety glass – safety hazard.
Sliding glass closet door hardware malfunction – repair.
Sliding glass closet door side strip loose, exposing glass edge – safety hazard.

This confidential report is provided exclusively for: Hugh Larkin

---

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 4/21/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____Deputy
Donna H. Hernandez



| I=Inspected | | NI=Not Inspected | | NP=Not Present   R=Not Functioning or In Need of Repair |
|---|---|---|---|---|
| I | NI | NP | R | Inspection Item |

**✔ ☐ ☐ ✔   H. Windows**
*Comments:* Difficult to operate -- repair.
*Latches:*
Won't fully lock -- repair.

**✔ ☐ ☐ ✔   I. Fireplace/Chimney**
*Comments:* No apparent source of outside combustion air.
Damper difficult to operate.

**✔ ☐ ☐ ✔   J. Porches, Decks and Carports (Attached)**
*Comments:* Worn, cracked boards on deck.
Inadequate flashing at wall connection.

Note that currently available types of pressure treated lumber require more
corrosion resistance for all fasteners and metal components than previous types
of pressure treated lumber. Manufacturer suggests stainless fasteners.

**✔ ☐ ☐ ✔   K. Other**
*Comments:*
*Stairway:*
Steps open in back -- safety hazard.

### II. ELECTRICAL SYSTEMS
**✔ ☐ ☐ ✔   A. Service Entrance and Panels**
*Comments:* type of service:  Underground  service
*Service panel:*
White wires used for power distribution, connected to breaker with no colored
tape for identification -- safety hazard.
Circuit breaker for AC system oversized. Maximum 20 amp breaker called for on
AC unit, 30 amp present -- safety hazard.

House served by:  Copper wire

**✔ ☐ ☐ ✔   B. Branch Circuits - Connected Devices and Fixtures** (Report as in need of
repair the lack of ground fault circuit protection where required.):
*Comments:*
GFI protection not working right side of stove -- safety hazard.
*Conduit:*
Conduit improperly terminated, water heater -- safety hazard. All conduit is to be
terminated in an appropriate electrical box with approved fittings.
*Outlets:*
Hot/neutral reversed, right side of stove -- safety hazard.
*Switches:*
Function unknown, bedroom [possibly for ceiling fan] -- repair.
Poor/inconvenient location, bedroom closet -- repair. Switch behind door.
Switch missing for hydromassage tub. GFI units are not designed for normal
switching duty.
*Fixtures:*
Ceiling fan lights out -- repair.

This confidential report is provided exclusively for:  Hugh Larkin

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 4/21/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Donna M. Hernandez



| I=Inspected | | NI=Not Inspected | | NP=Not Present  R=Not Functioning or In Need of Repair |
|---|---|---|---|---|
| I | NI | NP | R | Inspection Item |

### III. HEATING, VENTILATION AND AIR CONDITIONING [HVAC] SYSTEMS

✔ ✔ ☐ ☐  **A. Heating Equipment**

*Type and Energy Source:* central heat, electric, forced air

*Comments:* HVAC system appeared to be of recent vintage. Suggest securing details of installation and all warranty documentation.

Heater not operated, per client.

✔ ☐ ☐ ✔  **B. Cooling Equipment:**

*Type and Energy Source:* electrical, split system, AC

*Comments:*

Temperature measurements suggest typical operation conditions.

Differential temperature measurements between return air entry and the coolest vent output was measured as 16 F. This differential is usually expected to range between 16 - 21 F. A temperature differential outside this range is likely to indicate improper operation of the AC system, and calls for a more detailed analysis by a qualified HVAC technician.

*Inside conditions:*

Outer cover missing bottom hinges – safety hazard.

Cooling coil dirty – repair.

*Drip pan:*

Missing. Water sensor apparently installed in overflow drain.

✔ ☐ ☐ ✔  **C. Ducts and Vents**

*Comments:*

*Returns:*

Dirty – repair.

Open hole around ducts in floor – repair.

Not sealed at return cavity floor – repair.

*Vents:*

Vent above system too close to return opening with no air flow adjustment – repair. Close proximity to return tends to support short cycling and inadequate dispersion of air. Suggest replacement with vent cover with flow adjustment and pointing upward.

### IV. PLUMBING SYSTEM

✔ ☐ ☐ ✔  **A. Water Supply System and Fixtures**

*Comments:*

*Main supply valve:*

"P2903.9.1 Service valve. Each dwelling unit shall be provided with an accessible main shutoff valve near the entrance of the water service. The valve shall be of the full open type having a nominal restriction to flow, with provision for drainage such as a bleed orifice or installation of a separate drain valve. Additionally the water service shall be valved at the the curb or property line in accordance with local requirements."

Missing – repair.

*Toilets:*

Toilet tank water level less than one inch from top of overflow tube – repair.

Fill valve not shutting off fully – repair.

*Tubs:*

Hydro-massage bathtub missing switch – repair.

Hydromassage tub air valves would not open.

This confidential report is provided exclusively for:  Hugh Larkin

---

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 4/21/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____Deputy

Donna M. Hernandez



| I=Inspected | | NI=Not Inspected | | NP=Not Present   R=Not Functioning or In Need of Repair |
|---|---|---|---|---|
| I | NI | NP | R | Inspection Item |

✔ ☐ ☐ ✔    **B. Drains, Wastes, Vents**
*Comments:* No visible cleanouts.
Tub drain slow – repair.
No access panel for tub drain.

✔ ☐ ☐ ✔    **C. Water Heating Equipment** (Report as in need of repair those conditions specifically listed as recognized hazards by TREC rules.)
*Energy Source:* electric
*Comments:* No electrical disconnect at heater – potential safety hazard.
*Location:* closet
*Electrical connections:*
Conduit improperly terminated – safety hazard.
*Tank condition:*
Appeared to be of recent vintage. Check for all warranty information and documentation.
*Pressure-Temperature valve:*
Pressure/temperature relief valve plumbed with physically reduced size 3/4 inch CPVC plastic pipe [which has less open area than 3/4 inch iron pipe] – safety hazard.
Ref., IRC 2000: Section P2803.6.1 Requirements of discharge pipe. "The diameter of the discharge piping shall not be less than the diameter of the relief valve outlet."
Ref., *Watts Regulator Company,*[PT valve manufacturer], "Should the drain pipe from relief valves be reduced in size less than drain opening size in valve? No. *The relieving capacity of relief valves is based on a full size discharge line.* Furthermore, there should be no shutoff valves in this line and it is essential that the drain line be piped to a safe place of disposal. The function of a T & P valve is to operate by discharging water and, therefore, means must be provided to eliminate possible scalding and water damage, during periods of relief." [emphasis added]
PT valve drain line not directed to safe, visible location – repair. Exit could not be located.
In case of runaway thermostat, the PT valve is designed to drain hot water from the water heater in significant volume, to prevent an explosion. This could result in large flow of hot water being discharged. Be sure this potential discharge is directed to a visible and safe location.
PT valve hard plumbed [missing union] – repair.
*Drip pan:*
   *Drip pan drain line:*
Not connected. Suggest adding water sensor with alarm.
. – repair.

Suggest considering tankless type for lower operating costs, endless hot water and enhanced safety.

**V. APPLIANCES**
✔ ☐ ☐ ✔    **A. Dishwasher**
*Comments:* Visible corrosion, chipped spot on porcelain bottom – repair.
No visible electrical disconnect – potential safety hazard.

This confidential report is provided exclusively for: Hugh Larkin

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 4/21/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Donna M. Hernandez



| I=Inspected | NI=Not Inspected | NP=Not Present | R=Not Functioning or in Need of Repair |
| --- | --- | --- | --- |

| I | NI | NP | R | Inspection Item |
| --- | --- | --- | --- | --- |
| ✔ | ☐ | ☐ | ✔ | **B. Food Waste Disposer** |

Comments: Noisy operation – repair/replace.

| I | NI | NP | R | |
| --- | --- | --- | --- | --- |
| ✔ | ☐ | ☐ | ✔ | **C. Range Hood** |

Comments: No outdoor discharge – repair.

| I | NI | NP | R | |
| --- | --- | --- | --- | --- |
| ✔ | ☐ | ☐ | ✔ | **D. Ranges/Ovens/Cooktops** |

Comments: Oven missing anti-tilt device – safety hazard,
Oven temperature measured as 359 F for a setting of 350 F. Oven normal
temperature range expected to be within 25 F.

| I | NI | NP | R | |
| --- | --- | --- | --- | --- |
| ☐ | ☐ | ✔ | ☐ | **E. Microwave Cooking Equipment** |

Comments: .

| I | NI | NP | R | |
| --- | --- | --- | --- | --- |
| ☐ | ☐ | ✔ | ☐ | **F. Trash Compactor** |

Comments:

| I | NI | NP | R | |
| --- | --- | --- | --- | --- |
| ✔ | ☐ | ☐ | ☐ | **G. Bathroom Exhaust Fans and/or Heaters** |

Comments: .

| I | NI | NP | R | |
| --- | --- | --- | --- | --- |
| ☐ | ☐ | ✔ | ☐ | **H. Whole House Vacuum Systems** |

Comments: ·

| I | NI | NP | R | |
| --- | --- | --- | --- | --- |
| ☐ | ☐ | ✔ | ☐ | **I. Garage Door Operators** |

Comments:

| I | NI | NP | R | |
| --- | --- | --- | --- | --- |
| ☐ | ☐ | ✔ | ☐ | **J. Door Bell and Chimes** |

Comments:

| I | NI | NP | R | |
| --- | --- | --- | --- | --- |
| ✔ | ☐ | ☐ | ✔ | **K. Dryer Vents** |

Comments  Dryer vent not connected to dryer – repair.
Vent termination not visible. Be sure to check vent pipe for blockage before
connecting dryer. The longer the pipe, the more likely the lint builds up inside
over time and use.

| I | NI | NP | R | |
| --- | --- | --- | --- | --- |
| ☐ | ☐ | ✔ | ✔ | **L. Other Built-in Appliances** |

Comments: Refrigerator/freezer was not built-in but was checked for operation.
Washer and dryer were not built-in but dryer was operated for function. Washer
had clothes in it so was not operated.
Drip pan missing for washer – repair.

## VI. OPTIONAL SYSTEMS

| I | NI | NP | R | |
| --- | --- | --- | --- | --- |
| ☐ | ✔ | ☐ | ☐ | **A. Security Systems** |

Comments: Security system to be checked by Brinks Home Security with
separate report provided.

| I | NI | NP | R | |
| --- | --- | --- | --- | --- |
| ✔ | ☐ | ☐ | ✔ | **I. Fire Protection Equipment** |

Comments:   Smoke alarms not present in each bedroom and adjacent hallway.

This confidential report is provided exclusively for:  Hugh Larkin

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 4/21/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy

Donna M. Hernandez



| I=Inspected | NI=Not Inspected | NP=Not Present | R=Not Functioning or In Need of Repair |
|---|---|---|---|
| I   NI   NP   R | | | Inspection Item |

## ADDITIONAL COMMENTS:

Safety related items should have highest action priority.

Suggest maintaining a special concern and vigilance around all wall penetrations, as moisture intrusion is the primary cause of long term deterioration of most modern structures.

Proper maintenance of all water heaters is an important safety precaution. From the *Watts Regulator Company*,[PT valve manufacturer]:  "WARNING: Following installation,The valve lever MUST be operated AT LEAST ONCE A YEAR by the hot water tank owner to ensure that the water-ways are clear. Certain naturally occurring mineral deposits may adhere to the valve, rendering it inoperative. When manually operating the lever, water will discharge and precautions must be taken to avoid contact with hot water and to avoid water damage. BEFORE operating lever, check to see that a discharge line is connected to this valve directing the flow of hot water from the valve to a proper place of disposal otherwise personal injury may result. If no water flows, valve is inoperative. TURN OFF THE WATER HEATER AND CALL A PLUMBER IMMEDIATELY."  If the valve refuses to reseal completely it is faulty and needs replacement.

All of Texas is subject to infestation by wood destroying insects. In the opinion of the inspector, all Texas properties should have an annual pest control inspection and an ongoing pest control warranty.

Please feel free to visit my web site at  *www..sruback.com*  and download some of the many articles available with useful information about various home maintenance topics.

Stephen Ruback
Professional Inspector

This confidential report is provided exclusively for:  Hugh Larkin

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 4/21/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Donna M. Hernandez



## Inspection Services

by **Stephen Ruback**

*Professional Inspector License #6030*

17515 Spring-Cypress, #C136, Cypress, TX  77429    832-489-1071

*NOTE:  All utilities must be turned on prior to the inspection. The inspector is not required to, and will not turn on utilities, nor inspect the condition of utility meters. For any leaks, please notify the appropriate utility.*

## INVOICE

Report # 502482

Home inspection performed exclusively for:  Hugh Larkin

Home inspection performed at:  2300 Old Spanish Trail, Unit 2070, Houston, TX  77054

Report to be emailed to:  helrex@aol.com    msalvacion@aol.com

Date performed:  08/01/08                     Size of house [square feet]: 815

| Item | Cost |
|------|------|
| Basic structural and mechanical inspection: | $350 |

Foundation type:  Slab on grade, condominium

Optional inspections:

Special considerations:

|  |  |  |
|--|--|--|
| **paid by check #** 1994 | Total Due | $350 |

**Limitations & Disclaimers**

1. This report only reflects the items listed, inspected and observed to be operable or inoperable at the time of inspection.
2. No representation is made concerning any other condition, hidden damage, or any future performance of any item.
3. This inspection is not to be interpreted as a guarantee or warrantee of any kind. The likelihood of unexpected repairs should still be anticipated.
4. In any case of complaint, the client agrees to notify the inspector in writing within seven days after the inspection, and allow prompt reinspection of the item complained about. Otherwise, all claims of damages are waived by the client.
5. If the client institutes any legal action against the inspector for any reason, and fails to prevail on any cause of the alleged action, the client shall be liable for all of the inspector's legal costs related to such action.
6. All damages for any condition or situation part of, or related to, this inspection are strictly limited to the inspection fee.

*I have read and understand all provisions of this contract.*

Inspection completion and acceptance acknowledgment

_____08/01/08
client signature                                              date

This confidential report is provided exclusively for:  Hugh Larkin

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy

Attest: 4/21/2015

**Stan Stanart, County Clerk**

Harris County, Texas

_____ Deputy

Donna M. Hernandez



*Inspection Services* by **Stephen Ruback**

*17515 Spring-Cypress, #C136, Cypress, TX 77429*

*832-489-1071*

# Real Estate Inspection Service Agreement

**As part of my commitment to service, I have arranged for certain third parties to make special offers to my clients, specifically a Brinks Home Security free inspection for which I receive nominal processing fees. They will contact you at a later date at the contact information you have provided with a special offer. Please let me know if you find these services to be of value so that I may confidently continue making them available to my future clients.**

**The reason for this service agreement is to help you, our client, understand what an inspection is and what it can and cannot do for you.**

## INTENT OF INSPECTION

It is the expressed intent and purpose of this report to inform you, the client, exclusively of the visual ("eyeball") observations and opinions made on the day of the inspection as to whether or not the structure, electrical, plumbing and mechanical components of the subject property are performing the function they were intended to perform, or are in need of immediate repairs. It is not within the intent and/or scope of the report to determine the insurability, habitability, suitability of use, economic life span, deferred maintenance issues and/or issues unnamed in this report. The inspection and report are neither an expressed nor implied warranty and/or guarantee as to future life and/or performance of the items inspected, but is intended to express the inspector's perceived impression of the apparent performance of the structure, electrical, plumbing and mechanical components viewed on the date of the inspection. The inspector's intent is to reduce your risk associated with this transaction, however, he can neither eliminate all risk nor assume your risk.

## SCOPE OF INSPECTION

The content of the report is based solely upon "eyeball" observations of apparent performance. Opinions have been formed from the inspector's personal knowledge and experience, and not upon any code requirements and/or performance standards. Compliance with any federal, state or local codes and/or other legal requirements is not within the scope or intent of this report.

## METHOD OF INSPECTION

The inspection methodology is not of a formal, engineered type of inspection; therefore, no soil, physical or geological testing or inspections are performed. Many of the structural, electrical, plumbing and mechanical components are judged indirectly by the visible condition of the surfaces and/or components open to view. Observations are made both inside as well as outside of the structure; however, these observations are limited to only those areas open to view without moving any item, (eg. inhabitant's furniture, belongings or stored items blocking the view).

The inspector does not disassemble any component of an item checked, (eg. disassemble a heating unit to inspect for a cracked heat exchanger), conduct extensive destructive testing, calculations, or removal of wall and floor covering unless noted in the body of this report.

## LIMITATION OF INSPECTION

The visual inspection method employed will generally produce a competent first impression assessment of the apparent past structural, electrical, plumbing and mechanical components – provided refurbishing or repairs have not been performed which would mask distress patterns normally produced by structural, electrical, plumbing and mechanical component problems.

**Because the inspection procedure is visual only, and not intended to be diagnostic and/or technically exhaustive, an inherent residual risk remains that undiscovered problems exist and/or future problems will develop.** There is no guarantee or warranty stated or implied that all defects have been found or that the inspector or his company will pay for the repair of any defect not discovered. The content off this report should be considered as an opinion of apparent performance of the items inspected and not an engineering fact.

**THIS INSPECTION DOES NOT INCLUDE THE INSPECTION OF, SAMPLING FOR OR TESTING OF ANY SUBSTANCE CLASSIFIED OR OTHERWISE IDENTIFIED WITH OR AS A TOXIC SUBSTANCE AND/OR BIOHAZARD OR WOOD DESTROYING INSECTS/ORGANISMS.**

page 1 of 3

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 4/21/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_Deputy_



*Inspection Services* by Stephen Ruback

*17515 Spring-Cypress, #C136, Cypress, TX 77429*

*832-489-1071*

**Real Estate Inspection Service Agreement Continued.**

**DISPUTE RESOLUTION**

In the event a dispute arises regarding an inspection that has been performed under this service agreement, Client(s) agree to notify Stephen Ruback within ten (10) days of the time of closing to give the inspector a reasonable opportunity to reinspect the property and resolve the dispute amicably. Upon the request of either party, all unresolved disputes relating to this agreement shall be submitted for binding arbitration in accordance with (AAA) American Association of Arbitrators then in effect, and then neither party shall have a right to bring suit in court. This provision shall be specifically enforceable and damages for breach of this provision shall include but not limited to court costs and attorney's fees. Client agrees that Stephen Ruback's liability, if any, shall be limited to the amount of the inspection fee paid for inspection.

By signing this document I confirm that I have read, understand, and agree to the above pre-inspection service agreement, and that I agree to be bound by these terms and conditions.

In the absence of Client to sign this service agreement prior to, or at the time of the inspection, this contract shall be included and become part of the report. Acceptance of the report and/or payment for the inspection is an acknowledgment, acceptance, and agreement by Client(s) to the terms of this service agreement, and limitations listed in the report, and an acknowledgment that the inspection includes only those items listed as inspected in the inspection report.

*The inspector does not conduct reinspection services for any reason, and is not in the business of certifying workmanship and/or warranting another company's repair work. Receipts and or warranty for work performed should be obtained from the companies who have provided repairs.*

**We DO NOT inspect security systems.** *Brinks Home Security* **will provide a free inspection for which we are paid a processing fee.**
*Brinks Home Security* **will contact you at a later date, at the phone numbers you have provided, with a special offer.**

Property Address: **2300 Old Spanish Trail, Unit 2070**, Houston, TX 77054

**If, after walking through the property with the inspector, you are in any way dissatisfied with the services provided by the inspector, you are under no obligation to pay the inspection fee.**

The inspector reserves the right to terminate the inspection at any time, for any reason he deems appropriate. A written report of the inspection results will be provided in a timely manner, after payment of inspection fee.

*e-mail a copy to me at:* helrex@aol.com   msalvacion@aol.com

**DO YOU WANT ME TO SEND A COPY OF REPORT TO THE REALTOR(S) ?????**

*Please Indicate YES or NO Below*
   (YES)   (NO)   to **Your Realtor** [or Buyer's Agent] – send a copy to:   msalvacion@aol.com

Inspection Fee $ 350

*I have read and undserstand all provisions of this contract.*

Client Name(s): Hugh Larkin

Signature(s): _____   Date: 08/01/08

Client mailing address _____

Inspector:  Stephen Ruback

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 4/21/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____Deputy

Donna M. Hernandez



# FEE OR OTHER VALUABLE CONSIDERATION DISCLOSURE

## CONCERNING THE PROPERTY AT
### 2300 Old Spanish Trail, Unit 2070, Houston 77054
(Street Address and City)

Under §1102.305 of the Texas Occupations Code and §535.217 of the Rules of the Texas Real Estate Commission, the Commission deems the following conduct by a licensed inspector to be dishonest and grounds for disciplinary action:

1) accepting a fee or other valuable consideration in a real estate transaction from a person or entity, other than the inspector's client, without first disclosing to all parties in the real estate transaction that the inspector intends to receive the fee or other valuable consideration, and obtaining the written consent of the inspector's client.

2) paying a portion of any fee received by the inspector to a service provider or a participant in a real estate transaction, other than the inspector's client, without the written consent of the inspector's client.

**Instructions: A licensed inspector must use this form to obtain the client's written consent pursuant to the requirements of §535.217.**

Inspector **Stephen Ruback**    license 6030

_____
Name                                    License Number

Is PAYING a portion of the fee received by the inspector to:

*none*

_____
Name of service provider or participant receiving fee from inspector


Inspector **Stephen Ruback**    license 6030

_____
Name                                    License Number

Is ACCEPTING a fee or other valuable consideration in this real estate transaction from:

*Brinks Home Security*

_____
Name of person or entity paying fee or valuable consideration to inspector  Inspector:

**I have been informed of this arrangement between the inspector named above and a third party, and I consent to the arrangement.**

*Hugh Larkin*          X _____

_____       _____
Name (Print)                                  Name (Signature)

### 2300 Old Spanish Trail, Unit 2070, Houston TX 77054

_____
Complete Address of Property Inspected

08/01/08

_____
Date

The form of this addendum has been approved by the Texas Real Estate Commission for use by licensed real estate inspectors. Such approval relates to this form only. No representation is made as to the legal validity or adequacy of any provision in any specific transactions. It is not suitable for complex transactions. Texas Real Estate Commission, P.O. Box 12188, Austin, TX 78711-2188.

1-800250-8732 or (512) 459-6544 (http://www.trec.state.tx.us)

01A

Form 7B-0

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 4/21/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy

Donna M. Hernandez



# Response to Request No. 25

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 4/21/2015
**Stan Stanart, County Clerk**
Harris County, Texas



_____Deputy

Donna M. Hernandez



Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 4/21/2015
**Stan Stanart, County Clerk**
Harris County, Texas



_____ Deputy



# Response to Number 28

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 4/21/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____Deputy

Donna M. Hernandez



# FAMOSE T. GARNER, ESQ.

famosegarner@gmail.com

4614 BRAZOS BEND DR.
PEARLAND, TEXAS 77584

CELL (832) 722-0881
HOME (281) 485-0955

## EDUCATION

**UNIVERSITY OF HOUSTON LAW CENTER, HOUSTON, TX**
**J.D., May 2010;** *Insignis Officio Dedicato* UHLC Distinguished Service Award
*Houston Law Review, Notes & Comments Editor;*
Mock Trial Team; Black Law Students Ass'n, *Vice President of External Affairs*
Honors: Fultz Merit Scholarship; ACS Diversity Scholarship; Best Comment in Banking, Bankruptcy or
Corporate Law; 2L on Law Review that Best Exemplifies the Character of a Trial Lawyer

**UNIVERSITY OF HOUSTON, HOUSTON, TX**
**M.B.A Finance, December 2004;**
Study Abroad Program (Chile); Bauer MBA Soc'y, *Vice President*

**PRAIRIE VIEW A&M UNIVERSITY, PRAIRIE VIEW, TX**
**B.S. Chemical Engineering, May 2001;**
Dean's Council 2000–01; Am. Inst. of Chem. Eng'rs, *President*; Nat'l Soc'y of Black Eng'rs, *Fundraising Chair*

## LEGAL EXPERIENCE

**FAMOSE GARNER, ATTORNEY AT LAW**                    January 2014 – Present
**Principal, Houston, TX**
Operated a small business litigation firm. Served as state and federal court appointed receiver. Represented state court appointed receivers. Formed small businesses. Reorganized small businesses with and without the Bankruptcy Code. Represented individual debtors in cases under Chapters 7, 11, and 13 of the Bankruptcy Code. Represented corporate debtors in cases under Chapters 7 and 11 of the Bankruptcy Code.

**UNITED STATES ARMY RESERVE**                    March 2013 – Present
**Judge Advocate, New Orleans, LA**

Provided legal services to Soldiers including: written legal correspondence on a Soldier's behalf, negotiation with adverse parties, drafting, completing, and execution of wills, powers of attorney, leases, and lease clauses, preparation and filing of federal and state income tax returns and other legal papers, assistance to Soldiers (pro se assistance) enabling Soldiers to file legal documents, papers, or pleadings in civil proceedings without an attorney, and limited in-court representation.

**GARNER SCOTT & JONES, PLLC**                    September 2012 – January 2014
**Partner, Houston, TX**
Handled various business and consumer bankruptcy matters. Handled business litigation and consumer protection matters.

**UNITED STATES BANKRUPTCY COURT, SOUTHERN DISTRICT OF TEXAS**
**HON. JEFF BOHM**                    July 2011 – September 2012
**Judicial Law Clerk, Houston, TX**
Drafted orders and opinions in bankruptcy cases and adversary proceedings; wrote initial drafts of published opinions including several cases of first impression on the impact of *Stern v. Marshall*; counseled with Judge on pending matters; managed the administrative affairs of chambers; oversaw and mentored interns; researched and prepared materials for Judge's speaking engagements; attended trials and other court proceedings.

**THE LAW OFFICE OF NELSON M. JONES III**                    February 2010 – July 2011
**Associate Attorney, Houston, TX**
Handled various consumer and business bankruptcy matters including 341(a) meetings, initial debtor conferences, confirmation hearings, and other ancillary motions. Prepared and concluded several real estate, contract, DTPA, and collection cases and transactions. Interviewed witnesses, propounded and responded to interrogatories, requested productions and admissions, took and defended depositions, briefed interlocutory motions, and drafted claim objections.

**JONES DAY**                    July 2009 – August 2009
**Summer Associate, Houston, TX**                    May 2008 – July 2008

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 4/21/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy

Donna H. Hernandez



IP Litigation – drafted memos detailing relevant law on lost profit recovery, invalidity, and claim construction; drafted motion to dismiss.

Bankruptcy – assisted with retainer application in a Chapter 11 case.

Trial Work – drafted pleadings and jury instructions in commercial litigation; drafted memos detailing relevant law on various issues including trade secrets, indemnity litigation, and summaries of expert opinions.

Transactional – assisted in due diligence matters on multiple master limited partnership mergers or acquisitions.

**AKIN GUMP STRAUSS HAUER & FELD**      May 2009 – July 2009

**Summer Associate,** Houston, TX

IP Litigation – drafted memos detailing relevant law on various issues regarding federal rules; completed intrinsic and extrinsic analysis of disputed terms in an infringement case.

Trial Work – assisted drafting a memorandum in support of a motion for summary judgment.

**UNITED STATES DISTRICT COURT, SOUTHERN DISTRICT OF TEXAS**

HON. DAVID HITTNER      January 2009 – May 2009

HON. GRAY H. MILLER      January 2008 – May 2008

**Chambers Intern,** Houston, TX

Researched complex legal issues and briefed the court; drafted opinions; composed responses to motions; and observed federal court proceedings.

## BUSINESS EXPERIENCE

**TEXAS PETROCHEMICALS LP**      October 2005 – September 2007

**Financial Risk Manager,** Houston, TX

Supervised products pricing risk management by evaluating and executing derivative hedging strategies; constructed economic models of target plant during a strategic business acquisition; provided operational expertise to finance and financial expertise to operations.

**RHODIA INC**      August 2004 – October 2005

**Production Engineer,** Freeport, TX

Managed the operations of a specialty chemicals production facility by implementing tools of World Class Manufacturing; initiated a statistical process control program and managed supply chain operations of the plant.

**BASF CORPORATION**      June 2001 – March 2003

**Operations Engineer,** Freeport, TX

Supported day-to-day operation of purification plant with analysis and troubleshooting; implemented various small capital projects to improve operational efficiency.

## PROFESSIONAL MEMBERSHIPS

State Bar of Texas – Admitted 11/2010;
United States District Court for the Southern District of Texas – Admitted 11/2010;
Houston Lawyers Association – Board Member, Elected 10/2010.
American Inns of Court – Garland R Walker American Inn of Court

## COMMUNITY MEMBERSHIPS

ZTL Education Foundation – Chairman of the Board of Directors and Founder 10/2010;
Sickle Cell Association of the Texas Gulf Coast – Board Member, Elected 3/2011;
Alpha Phi Alpha Fraternity, Incorporated.

## SELECTED PUBLICATIONS & PRESENTATIONS

*Putting the Honest Back in "Honest but Unfortunate Debtor": A Debtor's Duty to Report a Beneficial Change in Circumstances,* 47 HOUS. L. REV. 105 (2010).

"Best Practices – First Day Motions and Hearings Case Summaries," Fifth Circuit Bench-Bar Bankruptcy Conference, 2012

"It's Not Over 'til It's Over: Chapter 13 Post-Confirmation Issues," 10th Annual Consumer Bankruptcy Conference, 2014

"Receivers in Bankruptcy," Southern District of Texas Bench / Bankruptcy Bar Conference, 2014

## INTERESTS

Hunting, golf, property acquisitions, options trading

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 4/21/2015
**Stan Stanart, County Clerk**
Harris County, Texas

 

_____Deputy



IP Litigation – drafted memos detailing relevant law on lost profit recovery, invalidity, and claim construction; drafted motion to dismiss.

Bankruptcy – assisted with retainer application in a Chapter 11 case.

Trial Work – drafted pleadings and jury instructions in commercial litigation; drafted memos detailing relevant law on various issues including trade secrets, indemnity litigation, and summaries of expert opinions.

Transactional – assisted in due diligence matters on multiple master limited partnership mergers or acquisitions.

**AKIN GUMP STRAUSS HAUER & FELD** May 2009 – July 2009
**Summer Associate,** Houston, TX
IP Litigation – drafted memos detailing relevant law on various issues regarding federal rules; completed intrinsic and extrinsic analysis of disputed terms in an infringement case.

Trial Work – assisted drafting a memorandum in support of a motion for summary judgment.

**UNITED STATES DISTRICT COURT, SOUTHERN DISTRICT OF TEXAS**
**HON. DAVID HITTNER** January 2009 – May 2009
**HON. GRAY H. MILLER** January 2008 – May 2008
**Chambers Intern,** Houston, TX
Researched complex legal issues and briefed the court; drafted opinions; composed responses to motions; and observed federal court proceedings.

## BUSINESS EXPERIENCE

**TEXAS PETROCHEMICALS LP** October 2005 – September 2007
**Financial Risk Manager,** Houston, TX
Supervised products pricing risk management by evaluating and executing derivative hedging strategies; constructed economic models of target plant during a strategic business acquisition; provided operational expertise to finance and financial expertise to operations.

**RHODIA INC** August 2004 – October 2005
**Production Engineer,** Freeport, TX
Managed the operations of a specialty chemicals production facility by implementing tools of World Class Manufacturing; initiated a statistical process control program and managed supply chain operations of the plant.

**BASF CORPORATION** June 2001 – March 2003
**Operations Engineer,** Freeport, TX
Supported day-to-day operation of purification plant with analysis and troubleshooting; implemented various small capital projects to improve operational efficiency.

## PROFESSIONAL MEMBERSHIPS
State Bar of Texas – Admitted 11/2010;
United States District Court for the Southern District of Texas – Admitted 11/2010;
Houston Lawyers Association – Board Member, Elected 10/2010.
American Inns of Court – Garland R Walker American Inn of Court

## COMMUNITY MEMBERSHIPS
ZTL Education Foundation – Chairman of the Board of Directors and Founder 10/2010;
Sickle Cell Association of the Texas Gulf Coast – Board Member, Elected 3/2011;
Alpha Phi Alpha Fraternity, Incorporated.

## SELECTED PUBLICATIONS & PRESENTATIONS
*Putting the Honest Back in "Honest but Unfortunate Debtor": A Debtor's Duty to Report a Beneficial Change in Circumstances,* 47 HOUS. L. REV. 105 (2010).

"Best Practices – First Day Motions and Hearings Case Summaries," Fifth Circuit Bench-Bar Bankruptcy Conference, 2012

"It's Not Over 'til It's Over: Chapter 13 Post-Confirmation Issues," 10th Annual Consumer Bankruptcy Conference, 2014

"Receivers in Bankruptcy," Southern District of Texas Bench / Bankruptcy Bar Conference, 2014

## INTERESTS
Hunting, golf, property acquisitions, options trading

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 4/21/2015
**Stan Stanart, County Clerk**
Harris County, Texas



_____ Deputy

Donna M Hernandez



# Response to Request No. 26

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 4/21/2015
**Stan Stanart, County Clerk**
Harris County, Texas



_____Deputy

Donna M. Hernandez

Confidential information may have been redacted from the document in compliance with the Public Information Act.

Supplemental Page
HUD-1 Settlement Statement

First American Title Insurance Company
Settlement Statement

File No. 1228841-HO15
Loan No. 190007366
Settlement Date:

Borrower Name & Address: Hugh E. Larkin
24339 Elkenwalk Lane, Katy, TX 77493

Seller Name & Address: Krystin C. Baker f/k/a Krystin R. Calhoun, William Baker

| Section L. Settlement Charges continued | Paid From Borrower's Funds at Settlement | Paid From Seller's Funds at Settlement |
|---|---|---|
| 1106. Supplemental Summary | $24.00 | |
| e)TX-T-3R UTP Simul e/OTP (R-5a)3276 - First American Title Insurance Company | 100.00 | 624.00 |
| f)TX-T-1R OTP Simul (R-5a)1350 - First American Title Insurance Company | 69.70 | |
| 1107. Supplemental Summary | | |
| 1118.T-13.30 Tax Amendment End (Restart) (R-19)-0700 - First American Title Insurance Company | 20.00 | |
| 1119.TX-3.3 Tax Amend End He/Evd OwnEP/mh/PCH)-0710 - First American Title Insurance Company | 5.00 | |
| 1120.TX-1.10 RCH End Restricted (R-29)-0095 - First American Title Insurance Company | 34.70 | |
| 1301. Supplemental Summary | 124.00 | |
| a) Record Deed of Trust/Mortgage - First American Title Insurance Company | | 98.00 |
| b) Record Deed - First American Title Insurance Company | | 28.00 |

| Section J. Summary of Borrower's Transaction continued | Borrower Charges | Borrower Credits |
|---|---|---|
| 199. Gross Amount Due From Borrower | | |
| 205. Amounts Paid By Or In Behalf of Borrower | 900.00 | |
| 291. Supplemental Summary | | 500.00 |
| q)PCH1365EH | | |

| Section K. Summary of Seller's Transaction continued | Seller Charges | Seller Credits |
|---|---|---|
| 400. Gross Amount Due To Seller | | |
| 500. Reductions In Amount Due to Seller | 84,034.79 | |
| 591. Supplemental Summary | | |
| q) Principal Balance - Wells Fargo Home Mortgage | 82,910.80 | |
| Recording Costs | 16.00 | |
| Provided Mortgage Insurance Due to HUD | 77.00 | |
| Fee Fee | 8.00 | |
| Int Per Diem=9 to 08/01/2006 | 612.95 | |
| Int Per Diem=9 to 10/12/2006 | 612.95 | |

| The following Section is restated from the Settlement Statement Page 1 | | |
|---|---|---|
| 303. Cash At Settlement To/From Borrower | 106,855.51 | |
| 301. Gross amount due from Borrower (line 120) | 76,572.35 | |
| 302. Less amounts paid by/for Borrower (line 220) | 24,983.98 | |
| 303. Cash (X From) (To) Borrower | | |
| 603. Cash At Settlement To/From Seller | 87,724.57 | |
| 601. Gross Amount due to Seller (line 420) | 102,969.05 | |
| 602. Less reductions in amounts due to Seller (line 520) | | |
| 603. Cash (To) (X From) Seller | 9,090.99 | |

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.



A Certified Copy
Attest: 4/21/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy

Donna M. Hernandez



File No. 1226841-H015 - SM

## SELLER'S AND/OR PURCHASER'S/BORROWER'S STATEMENT

I have carefully reviewed the HUD-1/Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1/Settlement Statement.

The Seller's and Purchaser's/Borrower's signatures hereon acknowledge their approval and signify their understanding that tax, and insurance prorations and reserves are based on figures for the preceding year or supplied by others or estimated for the current year, and in the event of any change for the current year, all necessary adjustments will be made between Purchaser/Borrower and Seller directly. Any deficit in delinquent taxes or mortgage payoffs will be promptly reimbursed to the Settlement Agent by the Seller.

The following persons, firms or corporations have received a portion of the real estate commission amount shown above (HUD Line(s) 701-704):

1. Prudential Gary Greene

2. Cherry Wolfarth

3. Marichu Salvacion

4. Exit Realty

I hereby authorize the Settlement Agent to make expenditures and disbursements as shown above and approve same for payment.

Purchaser(s)/Borrower(s)                          Seller(s)

_____                         _____
Hugh E. Larkin                                    Kristin O' Baker

                                                  _____
                                                  William Baker

_8/29/08_____                         _8/29/08_____
Date                                              Date

Borrower(s) Forwarding Address:                   Seller(s) Forwarding Address:

The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused or will cause the funds to be disbursed in accordance with this statement.

Settlement Agent: _____    Date: _8/29/08___

**WARNING:** It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine and imprisonment. For details, see: Title 18 U.S. Code Sections 1001 and 1010.

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 4/21/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy

Donna M. Hernandez



Privilege Log: Larkin v. Rodriguez, et al.
Case number: 1047713

| Document Number(s) | Author | Recipient | Date | Type of Document | Description | Privilege | Number of pages |
|---|---|---|---|---|---|---|---|
| L1 | Whitney Larkin | Whitney Larkin | 03/17/2014 | Plan layout | Calculation and notes regarding attic space according to recorded specifications | Work-product | 2 |
| L2 | Philip Silberman/Timothy Rodman | Whitney Larkin | 4/17/2014 | Document | Attorney fee agreement | Attorney-client/work product | 4 |
| L3 | Philip Silberman/Timothy Silberman | Whitney Larkin/Hugh Larkin | 02/10/2015 | Document | Attorney Fees | Work product | 2 |
| L4 | Timothy Rodman | Whitney Larkin/Hugh Larkin | 08/27/2014 | Email | Email regarding motion to dismiss hearing | Attorney-client | 1 |
| L5 | Whitney Larkin | Timothy Rodman | 08/27/2014 | Email | Email regarding motion to dismiss hearing | Attorney-client | 1 |
| L6 | Philip Silberman | Whitney Larkin, Timothy Rodman, Hugh Larkin | 9/17/2014 | Email | Email from Philip Silberman to Whitney Larkin regarding case strategy | Attorney-client | 1 |
| L7 | Timothy Rodman | Whitney Larkin | 12/1/2014 | Email | Email regarding | Attorney- | 1 |

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 4/21/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy

Donna M. Hernandez

| | | | | | case documents and strategy | client | |
|---|---|---|---|---|---|---|---|
| L8 | Timothy Rodman | Whitney Larkin | 12/17/2014 | Email | Email regarding case documents and strategy | Attorney-client | 1 |
| L9 | Whitney Larkin | Timothy Rodman | 12/17/2014 | Email | Email regarding case documents and strategy | Attorney-client | 1 |
| L10 | Timothy Rodman | Whitney Larkin | 12/17/2014 | Email with attachments | Email regarding case documents and strategy | Attorney-client | 13 |
| L11 | Whitney Larkin | Timothy Rodman | 12/17/2014 | Email | Email regarding case documents and strategy | Attorney-client | 1 |
| L12 | Timothy Rodman | Whitney Larkin | 12/17/2014 | Email | Email regarding case documents and strategy | Attorney-client | 1 |
| L13 | Whitney Larkin | Timothy Rodman | 1/2/2015 | Email with attachments | Email regarding case documents and strategy | Attorney-client | 34 |
| L14 | Whitney Larkin | Timothy Rodman | 1/7/2015 | Email | Email regarding case | Attorney-client | 1 |

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 4/21/2015
**Stan Stanart, County Clerk**
Harris County, Texas



_____Deputy

Donna M. Hernandez



| | | | | | documents and strategy | | |
|---|---|---|---|---|---|---|---|
| L15 | Timothy Rodman | Whitney Larkin | 1/8/2015 | Email | Email regarding case documents and strategy | Attorney-client | 1 |
| L16 | Whitney Larkin | Timothy Rodman | 1/8/2015 | Email | Email regarding case documents and strategy | Attorney-client | 1 |
| L17 | Timothy Rodman | Whitney Larkin | 1/19/2015 | Email | Email regarding case documents and strategy | Attorney-client | 1 |
| L18 | Whitney Larkin | Timothy Rodman | 1/20/2015 | Email | Email regarding case documents and strategy | Attorney-client | 1 |
| L19 | Timothy Rodman | Whitney Larkin | 1/20/2015 | Email | Email regarding case documents and strategy | Attorney-client | 1 |
| L20 | Whitney Larkin | Timothy Rodman | 1/23/2015 | Email | Email regarding case documents and strategy | Attorney-client | 1 |
| L21 | Whitney Larkin | Timothy Rodman/Philip Silberman/Hugh | 1/26/2015 | Email | Email terminating representation | Attorney-client | 1 |

**Confidential information may have been redacted from the document in compliance with the Public Information Act.**

A Certified Copy
Attest: 4/21/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____Deputy

Donna M. Hernandez



| | | Larkin | | | | | | |
|---|---|---|---|---|---|---|---|---|
| L22 | Chi Tran | Whitney Larkin | 2/9/2015 | Email | Email regarding case termination | Attorney-client | 1 |
| L23 | Whitney Larkin | Chi Tran | 2/10/2015 | Email | Email regarding final accounting | Attorney-client | 1 |
| L24 | Chi Tran | Whitney Larkin | 2/10/2015 | Email | Email with final accounting | Attorney-client | 2 |
| L25 | Chi Tran | Whitney Larkin | 2/10/2015 | Email | Email with final accounting | Attorney-client | 2 |

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 4/21/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Donna M. Hernandez



## LIMITED POWER OF ATTORNEY

I, Hugh Larkin, of Katy, Texas, appoint, Whitney Larkin, of Houston, Texas, as my attorney-in-fact to act on behalf for the purpose of real property at the address of 2300 Old Spanish Trail, Unit 2070, Houston, Texas 77054:

> Acting on behalf and in all capacity for all matters (including but not limited to voting, dealing with all affairs pertaining to the condominium, etc.) for the above-referenced property

This power of attorney starts to be effective on September 1, 2013, and shall continue until I formally revoke it in writing.

I grant my attorney-in fact full authority to act in any reasonable and necessary manner for the purpose of exercising the above powers. I ratify all lawfully performed acts by my attorney-in-fact in exercising those powers.

I agree that any third party who is given a copy of this power of attorney may act relying on it. I agree that revocation of this power of attorney is effective to as a third party only upon receipt of actual notice by the third party. If because of reliance on this power of attorney, a third party suffers any loss, I agree to indemnify the third party for the loss.

Signed this 27th day of August, 2013.

_____
Hugh Larkin

County of Harris

State of Texas

SWORN AND SUBSCRIBED TO before me on this day of August 28, 2013.

........................................
........................................
NOTARY PUBLIC IN AND FOR
THE STATE OF TEXAS

MICHAEL BERNARD WILSON, II
Notary Public, State of Texas
My Commission Expires
December 09, 2015

---

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 4/21/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Donna M. Hernandez



## CAUSE NO. 1047713

| | | |
|---|---|---|
| **HUGH LARKIN** | § | **IN THE COUNTY CIVIL COURT** |
| | § | |
| **vs.** | § | **AT LAW NO. FOUR (4)** |
| | § | |
| **HOLLY RODRIGUEZ & RIVERWALK** | § | |
| **COUNCIL OF CO-OWNERS, INC.** | § | **OF HARRIS COUNTY, TEXAS** |

### AFFIDAVIT OF WHITNEY C. LARKIN

Whitney C. Larkin appeared before me today and stated under oath:

"My name is Whitney Larkin, and I am over 18 years of age and am fully competent to make this affidavit. The facts stated herein are within my personal knowledge and are true and correct.

I am a licensed attorney in the State of Texas. I was appointed power of attorney by my father, Hugh Larkin, in September 2013 to handle all of his business affairs related to the condominium located at 2300 Old Spanish Trail, Unit 2070, Houston, Texas 77054. When I discovered the construction and fire wall removal by Defendant Holly Rodriguez, I informed my father. Per the policies and procedures of the condominium declaration, I also informed the board of the Riverwalk Council of Co-Owners of this violation. When the board did not respond to my inquiries, I decided to take legal action on my father's behalf in order to protect his property rights and interests. As Hugh Larkin's appointed attorney-in-fact of all matters related to the condominium, I contacted several different legal firms and attorneys to assist me in this legal matter. Ultimately, I decided to hire Philip Silberman. All communications between my father, the attorneys, and myself regarding the pending litigation remained strictly between my father, myself, our attorneys, and their staff. These communications were intended to be private and confidential, and, in fact, remained private and confidential. None of these communications were disclosed to any third parties, and, therefore all the communications remain privileged."

FURTHER AFFIANT SAYETH NOT

_____
Whitney Larkin

SUBSCRIBED AND SWORN TO BEFORE ME on 3-26-15, by Whitney Larkin

_____
Notary Public, State of Texas

> KIMBERLEY A. EVANS
> Notary Public, State of Texas
> My Commission Expires
> August 04, 2018

---

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 4/21/2015
**Stan Stanart, County Clerk**
Harris County, Texas



_____ Deputy



**CAUSE NO. 1047713**

| | |
|---|---|
| HUGH LARKIN<br>*Plaintiff* | § IN THE COUNTY CIVIL COURT |
| | § |
| V. | § |
| | § AT LAW NO. 4 |
| | § |
| HOLLY RODRIGUEZ & RIVERWALK | § |
| COUNCIL OF CO-OWNERS, INC. | § |
| *Defendants* | § OF HARRIS COUNTY, TEXAS |

## ORDER

Having reviewed the privilege log and documents submitted by Plaintiff, the Court finds that ~~all~~ *none of the* correspondence, agreements, and other materials submitted are privileged. ~~Plaintiff submitted confidential communication between Plaintiff, his agents, and his attorneys that Plaintiff made for the purpose of acquiring and rendering legal services. In re Ford Motor Co., 988 S.W.2d 714, 718 (Tex. 1998). In addition, Plaintiff asserted work-product privilege objections to Defendant Rodriguez' discovery requests. The Court finds that this material is privileged pursuant to Texas Rule of Civil Procedure~~ *insomuch as None of the materials are Communications between Plaintiff Hugh Larkin and his attorney of record, Philip Liberman. Further, by disclosing all these Communications to someone outside of the privilege (i.e., Whitney Larkin), Plaintiff Hugh Larkin has voluntarily waived any such privilege.*

192. Therefore, the Court ~~sustains~~ *overrules* all of Plaintiff's objections asserting privilege to Defendant Rodriguez' discovery requests.

IT IS SO ORDERED.

This ___ day of March, 2015.

_____
Judge Roberta Lloyd

**FILED**
**2015 MAR 18 AM 8:18**
Stan Stanart
COUNTY CLERK
HARRIS COUNTY, TEXAS

**RECORDER'S MEMORANDUM:**
At the time of recordation, this instrument was found to be inadequate for the best photographic reproduction because of illegibility, carbon or photo copy, discolored paper, etc. All blockouts, additions and changes were present at the time the instrument was filed and recorded.

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 4/21/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Donna M. Hernandez



CAUSE NO. 1047713

| | | |
|---|---|---|
| HUGH LARKIN | § | IN THE COUNTY COURT |
| Plaintiff, | § | |
| vs. | § | |
| | § | AT LAW NO. FOUR (4) |
| | § | |
| HOLLY RODRIGUEZ & RIVERWALK | § | |
| COUNCIL OF CO-OWNERS, INC., | § | |
| Defendants. | § | HARRIS COUNTY, TEXAS |

## ORDER ON PLAINTIFF'S MOTION FOR RECONSIDERATION OF ORDER OVERRULING ASSERTIONS OF PRIVILEGE TO DEFENDANT'S DISCOVERY REQUESTS

On _____, 2015, the Court heard Plaintiff's Motion for Reconsideration of Order Overruling Assertions of Privilege to Defendants' Discovery Requests.

After reviewing the Motion and hearing arguments of counsel, the Court finds that the Plaintiff's Motion should be ~~GRANTED~~. DENIED.

IT IS THERFORE ORDERED that the previous Order signed March 18, 2015, is ~~hereby~~ AFFIRMED and the documents referred to therein having been found NOT to be privileged SHALL be produced to Counsel for A. full + w/ no objection, on or before Monday, April 20, 2015, 12:00 PM CDT. Failure to comply with this deadline SHALL result in the $500.00 award of reasonable + necessary attorney's fees set forth in this Court's Order dated February 27, 2015 being imposed upon П, Hugh Larkin. П Hugh Larkin shall make said payment, if required by his failure to comply with the deadline set forth herein, on or before May 1, 2015, 12:00 PM CDT, at The office of Counsel for A. Rodriguez and in The form of a cashier's check for $500.00.

Dated this 15 day of April, 2015.

JUDGE PRESIDING

# LIMITED POWER OF ATTORNEY

I, Hugh Larkin, of Katy, Texas, appoint, Whitney Larkin, of Houston, Texas, as my attorney-in-fact to act on behalf for the purpose of real property at the address of 2300 Old Spanish Trail, Unit 2070, Houston, Texas 77054:

> Acting on behalf and in all capacity for all matters (including but not limited to voting, dealing with all affairs pertaining to the condominium, etc.) for the above-referenced property

This power of attorney starts to be effective on September 1, 2013, and shall continue until I formally revoke it in writing.

I grant my attorney-in fact full authority to act in any reasonable and necessary manner for the purpose of exercising the above powers. I ratify all lawfully performed acts by my attorney-in-fact in exercising those powers.

I agree that any third party who is given a copy of this power of attorney may act relying on it. I agree that revocation of this power of attorney is effective to as a third party only upon receipt of actual notice by the third party. If because of reliance on this power of attorney, a third party suffers any loss, I agree to indemnify the third party for the loss.

Signed this 27th day of August, 2013.

_____
Hugh Larkin

County of Harris

State of Texas

SWORN AND SUBSCRIBED TO before me on this day of August 28, 2013.

MICHAEL BERNARD WILSON, II
Notary Public, State of Texas
My Commission Expires
December 09, 2015

NOTARY PUBLIC IN AND FOR
THE STATE OF TEXAS

CAUSE NO. 1047713

| | | |
|---|---|---|
| HUGH LARKIN | § | IN THE COUNTY CIVIL COURT |
| | § | |
| VS. | § | AT LAW NO. FOUR (4) |
| | § | |
| HOLLY RODRIGUEZ & RIVERWALK | § | |
| COUNCIL OF CO-OWNERS, INC. | § | OF HARRIS COUNTY, TEXAS |

## AFFIDAVIT OF WHITNEY C. LARKIN

Whitney C. Larkin appeared before me today and stated under oath:

"My name is Whitney Larkin, and I am over 18 years of age and am fully competent to make this affidavit. The facts stated herein are within my personal knowledge and are true and correct.

I am a licensed attorney in the State of Texas. I was appointed power of attorney by my father, Hugh Larkin, in September 2013 to handle all of his business affairs related to the condominium located at 2300 Old Spanish Trail, Unit 2070, Houston, Texas 77054. When I discovered the construction and fire wall removal by Defendant Holly Rodriguez, I informed my father. Per the policies and procedures of the condominium declaration, I also informed the board of the Riverwalk Council of Co-Owners of this violation. When the board did not respond to my inquiries, I decided to take legal action on my father's behalf in order to protect his property rights and interests. As Hugh Larkin's appointed attorney-in-fact of all matters related to the condominium, I contacted several different legal firms and attorneys to assist me in this legal matter. Ultimately, I decided to hire Philip Silberman. All communications between my father, the attorneys, and myself regarding the pending litigation remained strictly between my father, myself, our attorneys, and their staff. These communications were intended to be private and confidential, and, in fact, remained private and confidential. None of these communications were disclosed to any third parties, and, therefore all the communications remain privileged."

FURTHER AFFIANT SAYETH NOT

_____
Whitney Larkin

SUBSCRIBED AND SWORN TO BEFORE ME on 3-26-15 , by Whitney Larkin

_____
Notary Public, State of Texas

KIMBERLEY A. EVANS
Notary Public, State of Texas
My Commission Expires
August 04, 2018

---

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 4/21/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy



# In re McCall

Court of Appeals of Texas, Eighth District, El Paso

June 20, 2002, Decided

No. 08-02-00071-CV

**Reporter**
2002 Tex. App. LEXIS 9373; 2002 WL 1341104

IN RE: MARY LINDA McCALL

## Case Summary

### Procedural Posture

In an action against her stepmother for division of property and breach of fiduciary duty, relator stepdaughter filed a petition for a writ of mandamus, seeking discovery of invoices for legal work done on behalf of a partnership. Respondent trial court had granted the stepmother's motion to quash the stepdaughter's subpoena and ruled that the invoices were covered by the attorney-client privilege.

### Overview

The stepmother and her two stepchildren became cotenants in oil and gas properties. The stepdaughter later filed suit for division of property and for breach of fiduciary duty against the stepmother. During discovery, the stepdaughter sought from the law firm all billing invoices for legal work done on behalf of the partnership. The stepdaughter moved to subpoena the invoices and to disqualify the law firm from representing the stepmother. The trial court granted the stepmother's motion to quash the subpoena and ruled that the invoices were covered by the attorney-client privilege and the law firm had no attorney-client relationship with the stepdaughter. The stepdaughter sought mandamus relief. The court found that an attorney-client relationship existed by virtue of the stepmother consulting the law firm as the stepdaughter's agent. The stepdaughter had no adequate remedy at law from the trial court's order barring her from discovery of the invoices because the invoices would not be part of an appellate record. The invoices were highly relevant to the stepdaughter's claim for breach of fiduciary duty and for her motion to disqualify the law firm from representing the stepmother.

### Outcome

The court vacated the trial court's order quashing the discovery of the invoices. However, the portions of the invoices relating to legal services rendered for the stepmother individually and outside of her capacity as an agent were not subject to be discovered by the stepdaughter. The trial court was to review the invoices in-camera and allow discovery of the relevant invoices.

## LexisNexis® Headnotes

Civil Procedure > ... > Writs > Common Law Writs > Mandamus

Civil Procedure > Appeals > Standards of Review > Abuse of Discretion

*HN1* Mandamus will lie only to correct a clear abuse of discretion and when there is no adequate remedy at law, or by normal appeal. A trial court abuses discretion when its decision lacks basis or guiding principles of law. While a higher standard of review applies to a trial court's decision on factual issues, a trial court has no discretion in

determining what the law is or applying the law to the facts. Thus, a clear failure by a trial court to analyze or apply the law correctly will constitute an abuse of discretion and may result in appellate reversal by extraordinary writ.

Civil Procedure > ... > Writs > Common Law Writs > Mandamus

*HN2* When a trial court disallows discovery and the missing discovery cannot be made part of the appellate record, thereby precluding appellate review, mandamus is a proper remedy. Before granting mandamus, a reviewing court should consider all relevant circumstances, such as the claims and defenses asserted, the type of discovery sought, what it is intended to prove, and the presence or lack of other discovery.

Legal Ethics > Client Relations > General Overview

*HN3* In the absence of an express agreement, an attorney-client relationship may be implied in some cases from the conduct of the parties.

Business & Corporate Law > Agency Relationships > Establishment > Definitions

Estate, Gift & Trust Law > Estate Planning > Powers of Attorney > General Overview

*HN4* An agent is one who is authorized by another to transact some business for the principal. A power of attorney creates an agency relationship.

Business & Corporate Law > ... > Authority to Act > Actual Authority > General Overview

*HN5* An agent has actual authority either expressly or impliedly to perform such acts as are necessary and proper to accomplish the purpose for which the agency was created.

**Judges:** [*1] Before Panel No. 1 Larsen, McClure, and Chew, JJ.

**Opinion by:** DAVID WELLINGTON CHEW

## Opinion

AN ORIGINAL PROCEEDING IN MANDAMUS

**OPINION**

This mandamus originates from Judge John G. Hyde's order granting the motion to quash Relator Mary Linda McCall's subpoena for invoices submitted to Dolores McCall ("Dolores") by the law firm of Cotton, Bledsoe, Tighe & Dawson, P.C. ("Cotton Bledsoe"). Mary Linda McCall ("Linda") brings two issues complaining that she is entitled to examine the invoices, because Cotton Bledsoe rendered legal services on her behalf and she paid for her proportion of the services. We conditionally grant the writ of mandamus.

After Jack O. McCall Sr.'s death in October 1991, Dolores, his second wife, and Linda and J.O. McCall Jr. ("J.O. Jr."), his two children from his first marriage, became co-tenants in certain oil and gas properties. In order to facilitate the administration of the properties, Cotton Bledsoe suggested that the three form a partnership and authorize Dolores to handle daily operations. Upon criticism from Linda's CPA, Cotton Bledsoe set up a limited power of attorney to transfer authority to Dolores without any changes in the properties' ownership. Both Linda and J.O. Jr. executed [*2] the limited and revocable power of attorney for Dolores to administer real property transactions only, and Dolores operated the properties under the names of McCall Family Partnership or McCall Family Properties.

In January 1998, Linda decided to end the relationship with Dolores and also filed suit for proper division of property under her mother's will and for breach of fiduciary duty against Dolores individually and as independent executrix of the Estate of Jack O. McCall Sr., Jack O. McCall Jr., and McCall Family Partnership a.k.a. McCall Family Properties. During discovery, she

sought from Cotton Bledsoe all billing invoices for legal work done for McCall Family Partnership a.k.a. McCall Family Properties for the years 1992-1999. Linda also requested that Cotton Bledsoe withdraw from representing Dolores because of possible conflict of interest due to the firm's representation of the Estate of Mary Jane McCall, Estate of Jack McCall Sr., and the McCall Family Partnership. Linda then moved to subpoena the invoices and to disqualify Cotton Bledsoe from representing Dolores. Dolores, still represented by Cotton Bledsoe, sought protection from the subpoena from the trial court, asserting [*3] the invoices from Cotton Bledsoe were protected under the attorney-client privilege. The trial court granted Dolores's motion to quash the subpoena and ruled that the invoices were covered by the attorney-client privilege and Cotton Bledsoe had no attorney-client relationship with Linda.

*HN1* Mandamus will lie only to correct a clear abuse of discretion and when there is no adequate remedy at law, or by normal appeal. *Braden v. Marquez,* 950 S.W.2d 191, 193-94 (Tex.App.--El Paso 1997, orig. proceeding). A trial court abuses discretion when its decision lacks basis or guiding principles of law. *Johnson v. Fourth Court of Appeals,* 700 S.W.2d 916, 917 (Tex. 1985)(orig. proceeding). While a higher standard of review applies to a trial court's decision on factual issues, a trial court has no discretion in determining what the law is or applying the law to the facts. *Braden,* 950 S.W.2d at 193. Thus, a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion and may result in appellate reversal by extraordinary writ. *Id.* *HN2* When the trial court disallows discovery and the missing discovery cannot be made part of the appellate record, thereby precluding [*4] appellate review, mandamus is a proper remedy. *Walker v. Packer,* 827 S.W.2d 833, 840-44 (Tex. 1992) (orig. proceeding); *In re Braden,* 960 S.W.2d 834, 837 (Tex.App.--El Paso 1997, orig. proceeding). Before granting mandamus, the reviewing court should consider "all relevant circumstances, such as the claims and defenses asserted, the type of discovery sought, what it is intended to prove, and the presence or lack of other discovery . . . ." *Walker,* 827 S.W.2d at 844.

It is undisputed that Linda and Cotton Bledsoe did not expressly contract for legal services. However, *HN3* in the absence of an express agreement, an attorney-client relationship may be implied in some cases from the conduct of the parties. *Mellon Serv. Co. v. Touche Ross & Co.,* 17 S.W.3d 432, 437 (Tex.App.--Houston [1st Dist.] 2000, no pet.); *Duval County Ranch Co. v. Alamo Lumber Co.,* 663 S.W.2d 627, 633 (Tex.App.--Amarillo 1983, writ ref'd n.r.e.).

Under the present facts, we believe that an attorney-client relationship existed by virtue of Dolores consulting Cotton Bledsoe in her capacity as Linda's agent. *HN4* An agent is one who is authorized by another to transact some business for the principal. *Bhalli v. Methodist Hosp.,* 896 S.W.2d 207, 210 (Tex.App.--Houston [1st Dist.] 1995, writ denied); [*5] *Neeley v. Intercity Mgmt. Corp.,* 732 S.W.2d 644, 646 (Tex.App.--Corpus Christi 1987, no writ). A power of attorney creates an agency relationship. *Plummer v. Estate of Plummer,* 51 S.W.3d 840, 842 (Tex.App.--Texarkana 2001, pet. denied); *Sassen v. Tanglegrove Townhouse Condo. Assoc.,* 877 S.W.2d 489, 492 (Tex.App.--Texarkana 1994, writ denied). *HN5* An agent has actual authority either expressly or impliedly to perform such acts as are necessary and proper to accomplish the purpose for which the agency was created. *Intermedics, Inc. v. Grady,* 683 S.W.2d 842, 847 (Tex.App.--Houston [1st Dist.] 1984, writ ref'd n.r.e.); *Houston Packing Co. v. Spivey,* 333 S.W.2d 423, 426 (Tex.Civ.App.--Eastland 1960, no writ).

To expedite the administration of the oil and gas property interests in which she was co-tenants with Linda and J.O. Jr., Linda granted Dolores a limited, revocable power of attorney in March 1995, which created an agency relationship

between Linda, as the principal, and Dolores, as the agent. In her capacity as Linda's agent, Dolores's ultimate purpose was to carry out oil and gas transactions, performing any necessary and proper acts to accomplish this. Seeking legal advice in the commission [*6] of the service was a necessary and proper act, and an attorney-client relationship was created between Linda and any law firm that Dolores consulted in her capacity as her agent. Cotton Bledsoe had certainly rendered legal service to Dolores, as Linda's agent, and had imputed knowledge of the agency relationship, since they had advised Linda and Dolores to execute the power of attorney and also ultimately assisted in dissolving the agency. *See, e.g., Broughton v. Humble Oil & Ref. Co.,* 105 S.W.2d 480, 484 (Tex.Civ.App.--El Paso 1937, writ ref'd) (Non-appearing defendant had attorney-client relationship with the law firm appearing on her behalf in a suit for adverse possession. Law firm had been hired by her agent, whom she had appointed to manage and look after the property.). [1]

We agree that Linda is entitled to inspect the invoices from Cotton Bledsoe, because attorney-client relationship existed between Cotton Bledsoe and Linda by the virtue of power of attorney she granted to Dolores. We conclude that the trial judge erred as a matter of law in finding no attorney-client relationship existed. Further, Linda has no adequate remedy at law from the trial court's order barring her from discovery of the invoices from Cotton Bledsoe, because the invoices will not be a part of the appellate record. The invoices from Cotton Bledsoe are highly relevant to Linda's claim for breach of fiduciary duty against Dolores and for her motion to disqualify Cotton Bledsoe from representing

Dolores in the suit. Dolores consulted Cotton Bledsoe in connection with the operation of the jointly owned properties and proportionately charged legal expenses to Linda. Whether the charges were properly made can only be determined from the invoices themselves, and their exclusion from the record would deprive Linda of adequate remedy at law.

Finding that Linda and Cotton Bledsoe had an attorney-client relationship, we vacate the trial court's order quashing the discovery [*8] of the invoices. However, it appears that Cotton Bledsoe also rendered some legal services to Dolores outside of her capacity as Linda's agent, and the portions of the invoices relating to these legal services rendered exclusively for Dolores individually and outside of her capacity as an agent are not subject to be discovered by Linda. We therefore instruct the trial court to review in-camera the invoices in the light of this opinion and allow discovery of the invoices relevant to the services Cotton Bledsoe rendered to Dolores in her capacity as Linda's agent. The writ is conditionally granted. The writ will issue only in the event the trial court should fail to act in accordance with this opinion.

We conditionally grant the writ of mandamus.

June 20, 2002

DAVID WELLINGTON CHEW, Justice

Before Panel No. 1

Larsen, McClure, and Chew, JJ.

(Do Not Publish)

---

[1] *See also Clarke v. Ruffino,* 819 S.W.2d 947, 949-50 (Tex.App.--Houston [14th Dist.] 1991, orig. proceeding)(Although the defendant had never asked the attorney to represent him in connection with the refinancing of his property, an attorney-client relationship existed. The attorney had investigated Mr. Lehtonen and reported the evaluation to the financing bank, he had billed Mr. Lehtonen, and Mr. Lehtonen had [*7] paid the attorney.).

# Tex. Evid. R. 503

This document is current through March 10, 2015

## Rule 503 Lawyer-Client Privilege

(a) *Definitions.* --In this rule:

    (1) A "client" is a person, public officer, or corporation, association, or other organization or entity - whether public or private - that:

    (A) is rendered professional legal services by a lawyer; or

    (B) consults a lawyer with a view to obtaining professional legal services from the lawyer.

    (2) A "client's representative" is:

    (A) a person who has authority to obtain professional legal services for the client or to act for the client on the legal advice rendered; or

    (B) any other person who, to facilitate the rendition of professional legal services to the client, makes or receives a confidential communication while acting in the scope of employment for the client.

    (3) A "lawyer" is a person authorized, or who the client reasonably believes is authorized, to practice law in any state or nation.

    (4) A "lawyer's representative" is:

    (A) one employed by the lawyer to assist in the rendition of professional legal services; or

    (B) an accountant who is reasonably necessary for the lawyer's rendition of professional legal services.

    (5) A communication is "confidential" if not intended to be disclosed to third persons other than those:

    (A) to whom disclosure is made to further the rendition of professional legal services to the client; or

    (B) reasonably necessary to transmit the communication.

(b) *Rules of Privilege.*

    (1) *General Rule.* --A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made to facilitate the rendition of professional legal services to the client:

    (A) between the client or the client's representative and the client's lawyer or the lawyer's representative;

    (B) between the client's lawyer and the lawyer's representative;

    (C) by the client, the client's representative, the client's lawyer, or the lawyer's representative

to a lawyer representing another party in a pending action or that lawyer's representative, if the communications concern a matter of common interest in the pending action;

**(D)** between the client's representatives or between the client and the client's representative; or

**(E)** among lawyers and their representatives representing the same client.

**(2)** *Special Rule in a Criminal Case.* --In a criminal case, a client has a privilege to prevent a lawyer or lawyer's representative from disclosing any other fact that came to the knowledge of the lawyer or the lawyer's representative by reason of the attorney-client relationship.

**(c)** *Who May Claim.* --The privilege may be claimed by:

**(1)** the client;

**(2)** the client's guardian or conservator;

**(3)** a deceased client's personal representative; or

**(4)** the successor, trustee, or similar representative of a corporation, association, or other organization or entity - whether or not in existence.

The person who was the client's lawyer or the lawyer's representative when the communication was made may claim the privilege on the client's behalf - and is presumed to have authority to do so.

**(d)** *Exceptions.* --This privilege does not apply:

**(1)** *Furtherance of Crime or Fraud.* --If the lawyer's services were sought or obtained to enable or aid anyone to commit or plan to commit what the client knew or reasonably should have known to be a crime or fraud.

**(2)** *Claimants Through Same Deceased Client.* --If the communication is relevant to an issue between parties claiming through the same deceased client.

**(3)** *Breach of Duty By a Lawyer or Client.* --If the communication is relevant to an issue of breach of duty by a lawyer to the client or by a client to the lawyer.

**(4)** *Document Attested By a Lawyer.* --If the communication is relevant to an issue concerning an attested document to which the lawyer is an attesting witness.

**(5)** *Joint Clients.* --If the communication:

**(A)** is offered in an action between clients who retained or consulted a lawyer in common;

**(B)** was made by any of the clients to the lawyer; and

**(C)** is relevant to a matter of common interest between the clients.